H. S. LEDBETTER v. STEPHEN QUICK.

*Landlord and Tenant—Agricultural Supplies.*

1. A landlord is entitled to the first lien upon the crop for rents due and advancements made. THE CODE, §1754.

2. Supplies necessary to make and save a crop, are such articles as are in good faith furnished to and received by the tenant for that purpose. And it was proper in the court to leave it to the jury to find, whether upon the evidence a mule and wagon, &c., were treated as andvancements.

3. *Held further*: Where landlord and tenant undertake by collusion and fraud to create an indebtedness to the former, under color of "advancements," to the prejudice of creditors of the tenant, such transaction will not be sustained.

(*Montague* v. *Mial*, 89 N. C., 137; *Livingston* v. *Farish*, *Ib.*, 140; *Womble* v. *Leach*, 83 N. C., 84, cited and approved).

CIVIL ACTION tried at Fall Term, 1883, of RICHMOND Superior Court, before *McKoy, J.*

This action is for the conversion of five bales of cotton, the plaintiff claiming the same as landlord of one Hiram Leviner, to whom the plaintiff had leased certain lands. There was a written contract of lease for agricultural purposes, containing a stipulation for payment of rent, the term being three years, beginning on January 1, 1882, and continuing until December 31, 1884.

The rent money was paid; and the controversy here is as to which of the parties to this suit is entitled to have his account for advancements of agricultural supplies and expenses in making and saving the crop paid out of the crop.

The plaintiff testified that, independently of the said lease, there was an agreement between him and Leviner that his account for supplies for the year 1882 should be paid out of the crop, to an amount not exceeding six hundred dollars, and that the same should be a lien on the crop. The plaintiff then offered to prove his account against Leviner, and the defendant objected, unless plaintiff could show that the articles sold were received by Leviner as advancements for making the crop. The court admitted the evidence, stating that the plaintiff could only recover for articles furnished to make and save the crop, and whether the same were furnished, and for what purposes used, would be a question for the jury. The defendant also objected to certain specific items in the account, upon the ground that the amounts charged were paid, not to Leviner, but to other persons, and there was no evidence that they were advancements made to Leviner for crop purposes. Objection overruled.

The defendant further objected to item 17 of the account, and in regard to this, the plaintiff testified that he sold Leviner a mule for $154 and took a note for the price, and a mortgage on the mule to secure it. And in reference to item 33, to which objection was also made, the plaintiff testified that he sold him a wagon for $55, and secured payment of the same in like manner, but that he took the wagon back under a power contained in the mortgage, and sold it for $36.

The plaintiff further testified that the defendant told him that he (the defendant) had gotten five bales of cotton from Leviner, and witness told the defendant that Leviner was his tenant, and that said cotton belonged to the plaintiff.

One Brantley Brown was then introduced by the plaintiff and testified, after objection by defendant, that he saw the defendant's wagons hauling off cotton from the plaintiff's place. This was

admitted in corroboration of the plaintiff's testimony, to-wit: that defendant told him to get five bales.

The defendant excepted to the overruling his objections, and introduced two liens or mortgages executed to him by Leviner to secure advancements for agricultural supplies—one dated February 16, 1882, and the other June 5, 1882, but did not introduce any evidence to show that anything was due on them.

Under the instructions of the court, the jury found the issues in favor of the plaintiff, and the defendant appealed from the judgment rendered.

*Mr. J. D. Shaw,* for plaintiff.
*Messrs. Strong & Smedes, Frank McNeill* and *Burwell, Walker & Tillett,* for defendant.

MERRIMON, J.   The landlord or his assigns can maintain an action against his tenant, or cropper, or the assignee of either, or any person, unless otherwise agreed upon between the parties to the lease, in case such tenant, cropper, or the assignee of either, or any person, shall remove the crop or any part of it from the land leased, or convert it, before the rents shall be paid, or before the conditions of the lease shall be performed or damages in lieu thereof paid; or before the "advancements" made by the landlord or his assigns to make and save the crop shall be paid; if such removal or conversion shall be made without the consent of the landlord or his assigns, as the case may be.   The statute in express terms vests the possession of the crop in, and creates a lien in favor of, the landlord or his assigns for the purposes mentioned, until the lien shall be discharged as indicated.   The landlord, or his assigns, has a lien upon his whole crop, and a special property in it to the extent of his lien, and is entitled to possession.   He has such a property interest as enables him to maintain his action for the recovery of the same.   THE CODE, §1754; *Montague* v. *Mial,* 89 N. C., 137; *Livingston* v. *Farish, Ib.,* 140, and the cases there cited; *Rawlings* v. *Hunt, ante,* 270.

In the case before us there was no question made as to the lease, which was executed on the 2d day of December, 1881, and it appears that the rents had been paid. The landlord alleged, however, that by agreement, contemporary with the lease, he as the landlord was to supply his tenant with "advances of provisions and supplies" during the year 1882, to make and save the crops to an amount not exceeding $600; that he made such "advancements" from time to time as required by the tenant, and there is still due to him on that account several hundred dollars, and that the defendant removed a part of the crop made during that year without his assent.

On the trial, the plaintiff produced his itemized account for advancements made to his tenant, and the defendant objected to the whole of it, unless the plaintiff could show that the things so supplied were really necessary to make and save the crop, or were expenses necessary and incident to this purpose, and the tenant so accepted and used the same. He likewise objected to sundry items in it, particularly to one for a mule and another for a wagon, because, as he insisted, they were not such things as were in their nature advancements.

The court left it to the jury to find from the evidence whether or not the things supplied were received and treated by the tenant as advancements, and instructed them that the rents having been paid, the plaintiff could only recover for advancements to make and save the crop; and as to the mule, he left it to the jury to find whether or not the mule was treated as an advancement.

It might be difficult, in many cases that might arise, to say what would or would not be advancements to make and save the crop, in the sense of the statute; but we think that a mule, or a wagon may, generally, be regarded as such advancement, if supplied in good faith for that purpose. The tenant, acting in good faith, must be the judge of what is necessary and proper to aid him in making and saving the crop, and when the landlord has in good faith furnished supplies as required by the tenant,

this will be sufficient on his part, without regard to the particular things supplied. There is a great variety of ways in which things not *per se* necessary to make and save a crop, may incidentally serve that purpose, and the tenant alone can be the better judge in such respects. He may employ laborers, and to pay them he may use goods that would seem to have no reference to a crop at all, and yet it very plainly appears to the reasonable mind that such goods would be supplies not inappropriate to pay for labor.

In the account, we notice several small items of charge for shoes, snuff, calico, and the like, not to a large amount, and for orders in favor of sundry persons who may have been, and probably were, laborers. It may be, and probably was, that the tenant found it convenient to pay his laborers in this way. If the laborer should find it convenient to take an order for goods to suit his taste and wants, or to accept goods from the tenant directly, we can see no just reason why he may not do so, and the expenditure on the part of the tenant in such way would not destroy the character of the supplies as advancements. Indeed, goods supplied, and almost anything of value, would, in this view, be treated as supplies in the sense of the statute. Much the larger part of the account is made up of items for such things as were manifestly advancements, such as flour, meal, corn, and like articles.

Leaving out the particular items objected to, except those for the mule and wagon, and there would still be a very considerable balance in favor of the plaintiff. The plaintiff was a witness on the trial in his own behalf. He was a competent witness, and it appears that the jury believed his testimony. He alone testified to the account. In any view of the account, there was a considerable balance due him, and he could, therefore, maintain his action. He was entitled to have possession of the whole crop, until his debt against the tenant for advancements was fully paid.

If the landlord and tenant should collusively and fraudulently

LEDBETTER *v.* QUICK.

undertake to create an indebtedness under color of advancements, no matter what might be the character of the supplies, in order to favor themselves, or either one of them, to the prejudice of the creditors, with or without liens on the crop, subsequent to the just lien of the landlord, such transaction could not be sustained. The debt for "advancements" must be such as is created in good faith on the part of the landlord. It must not be made collusively, nor can he be allowed to supply such things as advancements as are manifestly not such, and he has good reason to believe are not so intended. The "advancements," whether they be money or merchandise, must be such as go directly or indirectly to make or save the crop, and the tenant must be the judge of what best serves his purpose. *Womble* v. *Leach*, 83 N. C., 84.

The objection to the testimony of the witness Brown cannot be sustained. It was clearly competent. It tended to prove the removal of a part of the crop, and to sustain what the plaintiff had sworn.

The defendant introduced two "agricultural liens" upon the crop of the tenant—one executed on the 16th day of February, 1882, and the other on the 5th of June, 1882, but he did not offer to show that he had made any advancements, as contemplated by them. It was his folly or his misfortune, that he did not inform himself as to the claims and demands of the landlord before he supplied the tenant with the advancements. The statute, of which he was bound to take notice, gave the landlord a first lien for the rents due to and advancements made by him.

This is an action at law. The defendant does not rely upon, or pray for, equitable relief, as he might have done, if the crop were in excess of the debt due to the landlord.

There is no error, and the judgment must be affirmed. *Rawlings* v. *Hunt, supra.*

No error. Affirmed.