J. M. BREWER and R. S. BREWER v. H. R. CHAPPELL and L. WOODLIEF.

*Lien—Landlord—Mortgage.*

1. The lien of the landlord for rents, advancements, &c., provided in *The Code*, § 1754, takes precedence of all other liens.

2. An agricultural lien, created to secure advances made to one who is in possession of the land as mortgagor, in the absence of any agreement to the contrary with the mortgagee, is subject to the mortgage, and the mortgagor may take the crops to the exclusion of the holder of the lien.

CIVIL ACTION, tried before *Avery, J.,* at August Term, 1888, of WAKE Superior Court.

The parties agreed upon and submitted to the Court for its judgment thereupon the following statement of facts:

1. That on the 8th day of February, 1887, defendant Chappell was seized and possessed of a tract of land in Wake County, on which defendant Woodlief held registered mortgages, amounting to the value of the land, executed prior to that date.

2. That on the 8th day of February, 1887, defendant Chappell executed to plaintiffs, Brewer & Co., a lien bond, which was duly registered, for supplies to be furnished Chappell during the year 1887, to be used in making the crop on Chappell's land, and plaintiffs furnished supplies to the amount of $100, one-half before and the balance after the registration of the deed, hereinafter mentioned, to Woodlief.

3. That in January, 1887, Woodlief notified Chappell of his purpose to foreclose the mortgages, the power of sale having become absolute, held by him, and on March 23, 1887, Chappell and wife executed a deed in fee for said land, which was duly registered April 7, 1887, and immediately thereafter Woodlief rented said land to Chappell for one fourth of

the crop, and, as landlord, furnished him with a horse and supplies to make the crop on said land, amounting to $300.

4. The crop on said land was planted after the execution of the deed to Woodlief and the establishment of the relation of landlord and tenant between Woodlief and Chappell, and the three bales of cotton, to recover which this action was brought, taken by Woodlief, were a part of the crop made on the land as above stated, and was not sufficient to pay Woodlief's claim for rent and advancements.

5. It is agreed plaintiffs are entitled to the personal property, and if Woodlief is entitled to three bales of cotton under his claim as landlord, plaintiffs shall recover no cost of L. Woodlief.

6. That the value of the whole of said crop did not exceed three hundred dollars.

After argument, the Court rendered judgment for the plaintiff, from which the defendant appealed.

*Mr. N. Y. Gulley,* for the plaintiffs.
*Mr. T. R. Purnell,* for the defendant.

MERRIMON, J., (after stating the case.)   The statement of facts above set forth is not so explicit and orderly as it should be, but it sufficiently appears from it that the plaintiffs agreed in writing, with the defendant Chappell, on the 8th day of February, 1887, which writing was duly recorded, to advance to him the sum of one hundred dollars to enable him to produce a crop during the year 1887, on the land mentioned, that he was then about to cultivate, the purpose being to create a lien on the crops to be produced in favor of the plaintiffs as allowed by the statute. (*The Code,* §1799.)

At the time that agreement was made the defendant Chappell was the mortgagor and his co-defendant Woodlief was the mortgagee of a mortgage of the land mentioned, and the condition thereof was broken; thereafter, on the 23d

day of March, 1887, the mortgagor and his wife conveyed his equity of redemption in the land to the mortgagee, and he became the absolute owner of it, and at once leased it to Chappell for the year 1887, the latter agreeing to pay part of the crop as rent, and his landlord advanced to him three hundred dollars to enable him to make the crop.

At the time the agreement mentioned was made, the mortgage referred to was registered and the plaintiffs, therefore, had notice of it. At and before that time the defendant Woodlief was owner of the land as mortgagee. The defendant Chappell, in the absence of agreement to the contrary, was but the mortgagor remaining in possession of the land, not as of right, but by permission of the mortgagee; his possession was that of the mortgagee, and the latter might have turned him out of possession at his will and pleasure without notice. The mortgagee, as such, was the owner and had possession of the land; he had the right to control and let it, and the mortgagor did not have such right. The deed from the latter to the former of March, 1887, did not affect such ownership and right adversely; it simply enlarged and strengthened it. *Jones* v. *Hill,* 64 N. C., 198; *Johnson* v. *Prairie,* 94 N. C., 773; *Whitehurst* v. *Gaskill,* 69 N. C., 449; *Hill* v. *Nicholson,* 92 N. C., 24; *Coor* v. *Smith,* decided at this term.

The defendant Chappell, therefore, had no subsisting right to make the agreement with the plaintiffs as to the advancement of money—the land was not his and he had no lease or authority to cultivate it—he and the plaintiffs certainly made their agreements subject to the superior rights of the defendant Woodlief. He was not bound to lease the land to Chappell or to allow him to remain upon and cultivate it.

On the 23d of March, 1887, Chappell leased the land from the owner of it, his co-defendant. The relation of landlord and tenant then at once sprang up, and in the absence of agreement to the contrary the crops produced by the tenant " vested in possession of the lessor or his assigns at all times

until the rents of said lands shall be paid, and until all the stipulations contained in the lease or agreement shall be performed or damages in lieu thereof shall be paid to the lessor or his assigns, and until said party or his assigns shall be paid for all advancements made and expenses incurred in making and saving said crops. This lien shall be preferred to all other liens." (*The Code*, § 1754). Although there are other statutory provisions (*The Code*, §§ 1782, 1799) that provide for and allow certain other liens, and such as that claimed by the plaintiff, and that these shall be preferred to all others, still that recited above has been interpreted and applied in numerous cases, which decide that the lien of the landlord for rents and advancements is the lien first preferred above all others.

The Legislature did not intend, it seems to us, to vest the possession of the crops in the landlord at all times, and give him such a preferred lien, and then allow him to be divested of such possession, and his lien postponed in favor of others no more meritorious than his. The liens referred to, other than his, are simply declared to be preferred to all others, while his is accompanied and helped by the possession at all times of the crops until it shall be discharged. Why this striking and important difference in favor of the landlord? It imports much in his favor, and we are not at liberty to treat it as meaningless. *Montague* v. *Mial*, 89 N. C., 137; *Livingston* v. *Farish*, Id., 140; *Ledbetter* v. *Quick*, 90 N. C., 276; *Thigpen* v. *Leigh*, 93 N. C., 47; *Moore* v. *Faison*, 97 N. C., 322; *Wooten* v. *Hill*, 98 N. C., 48.

We are therefore of opinion that the defendant Woodlief was landlord of his co-defendant, and had a lien on the crops produced on the land, to secure the rent due him from, and the advancements made by him to his tenant, to be preferred above the lien of the plaintiffs thereon, and all other liens.

The plaintiffs should have informed themselves as to the relation of the defendant Chappell to the land and the

mortgagee, and as to who was landlord.   That they did not was their own neglect and misfortune.   They were charged with notice of the rights of the mortgagee and of his right as landlord.   *Ledbetter* v. *Quicks, upra.*

The judgment must be modified in accordance with the terms of the agreement of the parties, so as not to tax the defendant Woodlief with any cost in favor of the plaintiffs.

Error as to the judgment against Chappell, and affirmed as to judgment against Woodlief.