JOHN I. KILLEBREW et al. v. ASHLEY HINES et al.

*Vendor and Vendee—Crops—Mortgagor and Mortgagee—Lien.*

1. A vendor and vendee, for most purposes, occupy the relation of mortgagor and mortgagee.

2. The only sense in which a mortgagee can be said to have any interest in the crops growing on the mortgaged land, is that he has the right to them after he has taken possession, as an incident to his possession, but he will be held to a strict account, and the crops can be charged with the mortgage debt only when the land is insufficient to satisfy it.

3. Where the mortgagee has not entered, or where the crops are severed before his entry, he has no right to them.

4. While the mortgagee is seized of the legal estate, in equity the land is considered merely as a security for the debt, and the mortgagee as a trustee for the mortgagor.

5. Where the mortgagor has been permitted to remain in possession and cultivate the land, the mortgagee cannot, by entry and sequestration of the crops, defeat the claim of a creditor of the mortgagor who has made advances and acquired an agricultural lien.

6. The lien of a creditor who makes advances to the mortgagor to make the crop, is, by Sec. 1799 of *The Code*, superior to that of a mortgagee of the crop.

7. An unregistered mortgage does not affect the rights of junior encumbrancers, although they have express notice.

CIVIL ACTION, tried before *MacRae, J.*, upon exceptions to a report, at Spring Term, 1889, of EDGECOMBE Superior Court.

The plaintiffs contracted in writing on the first day of January, 1882, to sell to the defendant Hines a tract of land, and the following is a copy of that contract:

"Articles of agreement, between John I. Killebrew and Joshua Bullock, of the first part, and Joshua Hines, Ashley Hines and Watson Hines of the second part, witnesseth: That the said Hineses are to pay to Killebrew & Bullock fifteen bales of good cotton each year for ten years; then the said Killebrew & Bullock are to give the said Hineses a good deed in fee for the B. W. Barnes tract. of land. In case the said Hineses fail to make a full payment any one year, the balance may stand over for the year, but if they fail any two years in succession, then the contract is void, and they will pay rent or pay a forfeit to the said Killebrew & Bullock.

"This contract is to hold everything made on the land, unless otherwise agreed by Killebrew & Bullock.

"Given under our hands and seals."

" The object of this agreement is: if the said Hineses pay us 150 bales of good cotton, we bind ourselves to make them a good deed for the whole of the B. W. Barnes tract of land—we bind ourselves and our administrators, this 1st day of January, 1882.

" KILLEBREW & BULLOCK.

" Witness:

" JAS. W. TAYLOR "

Under this contract, the Hineses went into possession of and cultivated the land embraced by the contract. Afterwards, on the 18th day of December, 1882, this action was brought to recover from them, the Hineses, the possession of the crop produced in the year 1882, the same having been cotton, which had been baled, they having failed to deliver any cotton under the contract or as rent.

In aid of the action, the plaintiffs availed themselves of the provisional remedy of *claim and delivery*, and under and in pursuance of the same, the Sheriff seized thirty-six bales of cotton. Of these, twenty-four, as alleged, were produced on the land mentioned.

The defendant R. S. Wells was allowed to become a party defendant, and having given the undertaking required in such cases, the cotton was delivered to him. He answered, and alleged as a defence, that on the 18th day of January, 1882, the Hineses executed to him agricultural liens for supplies to make the crop on the land, which were duly registered; that he furnished such supplies as were contemplated by such liens, &c., &c., and was, by virtue of the same, entitled to the cotton.

Afterwards, by consent of parties, it was referred to a referee to hear and determine the issues of law and fact, who made report, the material part of which is as follows:

" 1. The plaintiffs, owning a tract of land called the Barnes tract, contracted, on January 1, 1882, to sell same

to defendants Ashley Hines, Joshua Hines and Watson Hines, who thereupon took possession. A copy of said unrecorded contract is herewith filed, according to the terms of which said vendees agreed to pay plaintiffs on the purchase money fifteen bales of cotton in the year 1882.

"2. That no part of said fifteen bales was paid, except two bales paid by one Lyon Barnes, who occupied part of the land, and who, in the year 1882, paid plaintiffs two bales of cotton. That at the time said contract was made, it was agreed by all parties that Lyon Barnes' payment should be a credit on the fifteen-bale payment.

"3. That plaintiffs made certain advances to vendees, defendants, to enable them to make the crop on said Barnes' place, viz:

Three tons kainit and one-half ton guano, worth____$64 00
Oats _____ 10 00
Meat _____  3 80
Cross-saw _____  3 50
                                                 _____
     Total_____$81 30

"4. That said vendees executed agricultural liens to defendant R. S. Wells upon the crops to be raised on the Barnes place in 1882, said Wells agreeing to furnish supplies to enable them to make said crops. Plaintiffs did not authorize said Wells to furnish said advances, and said Wells was notified, when he agreed to furnish said supplies, by one of the vendees, that plaintiffs would be entitled to thirteen bales of the crop of 1882. Said liens were for different amounts and by different parties, viz: Ashley Hines, to the amount of $265; Joshua Hines, to the amount of $200, and one-third of $400, equal to $133, total $333; so that the total amount for which liens were given was $598.

That said Wells, under said liens, made advances to the amount of said liens.

"5. That, in 1882, said vendees raised on the land seventeen bales, not counting the Lyon Barnes account above, which seventeen bales were delivered to said Wells, and were worth, December 1, 1882, the sum of $605.31.

"6. That thirteen bales of the cotton were worth, December 1, 1882, $462.80."

From these facts, the referee finds the following conclusions of law, viz:

"1. That plaintiffs had a right, under said contract, to demand fifteen bales of cotton of the crop of 1882, less the two bales paid them by Lyon Barnes.

"2. That plaintiffs' right to demand said thirteen bales was not divested by the liens executed to defendant R. S. Wells.

"3. That plaintiffs had no lien on the crops of 1882 to secure the advances made by them.

"4. That plaintiffs are entitled to recover from defendant R. S. Wells the sum of $462 80, with interest from December 1, 1882 (that is, the sum of $639.82), with interest on $462.80 from April 15, 1889, till paid."

The plaintiffs filed the following exceptions to the report of the referee:

"1. He ought to have distinctly found that the advancement made by the plaintiffs to the defendants (amounts in value to $81.30 on January 1, 1883) were made during the year 1882, to enable the defendants to cultivate the crops of that year in the lands described in the pleadings.

"That he also erred in not declaring, as a matter of law, that the plaintiffs, vendors and owners of the land, were entitled to the increase or produce of the land—that is, to all the cotton in controversy in this action (of the value of $605.31, with interest from December 1, 1882), whether the

whole of this amount was or was not necessary to satisfy such portion of the debt for the land as was then past due.

"3. That the referee erred in not allowing the plaintiffs the amount of their said advance ($81.30), and interest."

The defendant Wells filed the following exceptions:

"1. He errs in his conclusions of law, Nos. 1, 2 and 4.

"2. He errs in overruling the motion made by the counsel for the defendants, that the action had been dismissed by a former order of this Court.

"3. He erred in that he failed to find the value of the rent of the said land for the year 1882."

The Court overruled the exceptions, both by the plaintiff and the defendant Wells, and gave judgment in accordance with the report. The plaintiffs and defendants, having excepted, appealed.

The plaintiffs also filed exceptions to the judgment, whereof the following is a copy:

"1. His Honor erred in overruling the plaintiffs' first exception to the referee's report.

"2. His Honor erred in overruling their second exception.

"3. He erred in overruling their third exception.

"4. He erred in overruling their fourth exception."

The plaintiffs insist that his Honor ought to have decided—

"1. That the plaintiffs, as landlords, were entitled to judgment, not only for rent, but also for the advancements made by them.

"2. That the plaintiffs, as owners of the land and holders of the legal title, ought to have had judgment for the full value of the cotton seized at the commencement of this action and delivered to R. S. Wells, upon his intervening and giving bond."

*Mr. John L. Bridgers,* for the plaintiffs.
*Mr. George V Strong,* for the defendants.

SHEPHERD, J.—after stating the facts: The controversy in this case is between Wells, whose advances in money and supplies (which are secured by a registered agricultural lien) contributed materially to the making of the crops, and the plaintiffs, whose claim is based upon the legal title to the land upon which the crop was made, as well as upon the particular provisions of the unregistered contract to convey.

It is well settled that, so far as the questions involved in this action are concerned, a vendee, let into possession under a contract of purchase, stands on the same footing as a mortgagor in possession. *Jones* v. *Boyd*, 80 N. C., 258.

In discussing, therefore, the interesting question before us, the reasons and authorities applicable to the one will necessarily apply to the other. Without passing upon the contention of Wells, that, by a proper construction of the agreement, the vendees were entitled to the possession for at least two years, and that nothing was due the plaintiffs until the expiration of that time, and adopting the interpretation claimed by the plaintiffs, that, upon the failure of the vendees to make the first payment, they were entitled to enter without notice, we will first consider the rights of the plaintiffs by virtue of the *ordinary* relation of vendor and vendee, or what is the same as to this case, that of mortgagor and mortgagee.

It was said in *Coor* v. *Smith*, 101 N. C., 261, and *Brewer* v. *Chappell*, 101 N. C., 251, that, by reason of the legal title being in the mortgagee, and his right to enter without notice, the products of the land belong to him. It would be more correct to say that the products may, upon certain contingencies, become a security for the debt. While the mortgagor is permitted to remain in possession, *he is the owner of the crops*, and entitled to receive the rents and profits without liability to account. *Dunn* v. *Tillery*, 79 N. C., 497. It is only when the mortgagee *enters* that he is entitled to the possession of the growing crops, and this is because they are

*incident* to his possession of the soil.   He is held to strict account for them, and equity only charges them with the indebtedness when the land is insufficient to discharge it. It is in this sense only that the mortgagee can be considered as having any interest or "property" in the crops.   It follows, therefore, that, if the crops have been severed before entry, or if, as in this case, there has been no entry at all, the mortgagee, even as against the mortgagor, has no legal right to recover them.

The cases cited in *Brewer* v. *Chappell, supra,* did not pass upon this question, but the authority chiefly relied upon is *Jones* v. *Hill,* 64 N. C., 198, where it is said that "the mortgagee is entitled to the estate, with all the crops growing on it," and "that there is no injustice in this, because the land, including all its products, is a security for the mortgage debt, and, to that extent, the property of the mortgagee."   That case is no authority for the proposition that a mortgagee, out of possession, may bring an action in the nature of replevin for the recovery of the crops.   The plaintiff was the assignee of a mortgage creditor, and purchased the land at a sale under the mortgage.   He purchased, says the opinion, "the land and all the crops *growing* on it."   After his purchase, he demanded the possession of the land of a tenant, who was in under the mortgagor.   This was refused, and he brought his action for the rent, claiming the sum of fifteen hundred dollars.   Having asserted his right to the possession, he alleged that the defendant was insolvent and was disposing of the crops.   The Court extended its equitable aid by injunction to *prevent their removal.*   Such relief is often given, either by injunction or by the appointment of a receiver, in actions of ejectment and suits for foreclosure. In ejectment, where the *absolute* owner is suing for possession, the relief is given because he is entitled to the present possession of the land, and, owing to the insolvency of the defendant, his right to the *mesne* profits will be defeated.

In suits for foreclosure, the relief is only given where, by reason of the insufficiency of the value of the land and the insolvency of the mortgagor, the debt may be partially or wholly lost. In such case, as we will see hereafter, equity charges the growing crops and applies them to meet the deficiency. It may be that the crops can be thus charged, *as between the parties*, after severance, but before actual removal from the land. It is unnecessary, however, to pass upon this point, as no such case is presented here, and the rights of a third party have intervened. One of the reasons for granting equitable relief in the instances mentioned, grows out of this very capacity of the occupant to convert the products into personalty and pass the title to third persons.

When the mortgagee or vendor does not invoke the assistance of a Court of Equity, but relies solely upon his legal rights, he should not complain of the rigid and technical rules of the common law by which these rights are determined.

While a mortgagee is seized of the legal estate, in equity, as we have intimated, the lands mortgaged are considered only as a pledge or security for the debt, and the mortgagee is considered merely a trustee for the mortgagor. Greenleaf's Cruise, Real Prop., vol. I, p. 577; Story's Eq., vol. II, § 1013; Adams' Eq., 115.

"The equity doctrine is, that the mortgage is a mere security for the debt, and only a chattel interest, and that, until foreclosure, the mortgagor continues the real owner of the fee." Kent's Com., vol. IV, 159. Accordingly, Lord Mansfield said that, unless possession has been taken of the premises, or a receiver has been appointed, the mortgagor is the "owner as to all the world, and entitled to all the profit made." *Chinnery* v. *Black*, 3 Doug., 390.

"The principle is well settled that a mortgagor is not liable for rents and profits." *Boston Bank* v. *Reed*, 8 Pick.,

462, citing *Fitchburg Cotton Co.* v. *Melvin*, 15 Mass.; *Mead* v. *Lord Orrery*, 3 Atk., 244; *Keech* v. *Hall*, Doug., 20; *Higgins* v. *York Buildings*, 2 Atk., 107.

In Lord Orrery's case, Lord Hardwicke remarks: "As to the mortgagor, I do not know of any instance, where he keeps the possession, that he is liable to account for the rents and profits to the mortgagee, for the mortgagee ought to take legal remedies to get into possession. Nor does the mortgagee derive any profit from the land until actual entry, or other assertion of exclusive ownership, previous to which the mortgagor takes the rents and profits without liability to account." Greenleaf's Cruise, Real Prop., Note, vol. I, p. 582; Kent Com., vol. IV, 157.

Chief Justice Smith, in *Oldham* v. *Bank*, 84 N. C, 307, says, that a mortgage is an appropriation of real or personal property as a security for the mortgage debt, "and while the mortgagor, permitted to remain in possession, may take and use the rents and profits, the mortgagee, at least after default, may enter into or recover possession by action, in order that they may be applied to the reduction of his demand." To the same effect is *Dunn* v. *Tillery*, 79 N. C., 497, and "The Law in Relation to Crops," by Wade Rogers, (So. Law Review, Oct. and Nov., 1882). This is also decided in *Freedman's Saving Co.* v. *Shepherd*, 127 U. S., 502, where it is said that, "even where the income is specially pledged as security for the mortgage debt, with the right in the mortgagee to take possession upon the failure of the mortgagor to perform the conditions of the mortgage, the general rule is that the mortgagee is not entitled to the rents and profits of the mortgaged premises, until he takes actual possession, or until possession is taken in his behalf by a receiver."

These authorities, and many others, which we could cite, abundantly show that, until entry, the mortgagee is not entitled to rents. If he is not entitled to rents, how is it

possible that he can, before entry, recover the specific crops, which have been severed, and especially against the lienee, who has, by his advances, materially assisted in their production?

The correct doctrine, we think, is well stated in the learned opinion of RANDALL, C. J., in *Wooten* v. *Bellinger*, 17 Fla:, 302. The Court said: "Equity makes the mortgage, as between mortgagor and mortgagee, a charge upon the rents and profits, whenever the mortgagor is insolvent and the security is inadequate.  *  *  *  In this respect, it is said, by some authorities, that 'the land, with all its produce,' is regarded as a security for the mortgage debt as between the mortgagor and mortgagee; and where the security of the land is hazardous, or clearly insufficient, a receiver may be appointed for the purpose of subjecting the rents and profits of the mortgaged land, thus charging the produce with an equity, *though, up to the time of sequestration, there was no lien upon it;*  *  *  *  yet, though the products may be subjected or charged in equity with unpaid interest, taxes, &c., they cannot be said to be incumbered so as to give a preference to the mortgagee or vendor claiming a lien upon the land *as against another creditor,* who may obtain an express lien upon the crops under the statute, or by chattel mortgage or execution.  *Gilman* v. *Brown,* 1 Mason, 231; 1 Leading Cases in Eq ; 4 Amer., from 4 London Ed.; Tit. Vendor's Lien, 496, 502."

We must conclude, therefore, that if there be no entry or equitable proceeding by which the crops are *sequestered,* the mortgagee has no lien upon and cannot recover them in an action in the nature of replevin, either against the mortgagor or third persons.

Even after entry or sequestration, we hold that, where the mortgagor has been permitted to remain in possession and cultivate the soil, the lien for advances must prevail.   We put this on the ground that this implied agreement to remain

in possession must be presumed to have been made with reference to the general laws, and these provide that the agricultural lien shall be superior to all others except that of the landlord.

Another reason is, that equity will not·charge the crops so as to defeat the superior equity of the lienee, who has borne the expense of their cultivation and production. To hold that, under such circumstances, the mortgagee may enter and appropriate to his exclusive use the entire crop, would be dealing a fatal blow to a numerous class of agriculturists in this State, many of whom are so unfortunate as to have their lands encumbered by mortgages. If the mortgagee could enter at any time and apply the entire crop to his indebtedness, no one could be found to make advances to the mortgagor, and the result would be that a great part of the mortgaged land would remain' uncultivated, while the mortgagor would be deprived of earning the means with which to redeem his property.

Such, we apprehend, was never the doctrine of North Carolina, and the Act of 1889, ch. 476, protecting the holder of the agricultural lien against the mortgagee in such cases, was but declaratory of a correct exposition of existing laws.

The case of *Brewer* v. *Chappell,* and of *Coor* v. *Smith, supra,* in so far as they are inconsistent with the principle declared in this opinion, are overruled.

Thus far, as proposed, we have considered this case as governed by the law applicable to the ordinary relation of vendor and vendee, or mortgagor and mortgagee, and our conclusion is that the action cannot, in such case, be sustained.

We will now proceed to enquire into the effect of the following clause of the agreement: "This contract to hold everything made on the land, unless otherwise agreed by

Killebrew and Bullock," the vendors.   As no crops were in existence, this cannot be considered as a reservation of them so as to confer a lien, and the most favorable view to the plaintiffs is, that the words amount to a mortgage upon crops to be made.   This is binding, without registration, as between the parties, on the crops planted the year next after the execution of the mortgage ( *Wooten* v. *Hill*, 98 N. C., 49), but it cannot affect the rights of subsequent mortgagees, although they were fixed with actual notice.   *Todd* v. *Outlaw*, 79 N. C., 235.   Even if registered, it must, as we have seen, be subordinated to the superior lien conferred upon the defendant Wells by § 1799 of *The Code*.

We can see no injustice in this application of the statute. It was made in aid of agriculture, and its provisions extend not only to crops made on the land of the lienor, but to those made *on any land which he may cultivate*.   It must be presumed, we repeat, that all contracts by which persons are permitted to enter upon and cultivate land, are made with reference to the general law upon the subject.

The position that the plaintiffs are entitled to priority as landlords is without merit, for the agreement expressly negatives such a relation until the expiration of two years.

It follows, therefore, that Wells must be first satisfied to the amount of his advances.   If there be any balance, the plaintiffs are entitled to the same, to be applied as a part payment on the land.   Judgment must be given accordingly, and the plaintiffs must be taxed with the costs of both appeals.

MERRIMON, J. (concurring).   It seems to be suggested, by implication, in the opinion of the Court in this case, that something, not specified, was decided in *Brewer* v. *Chappell*, 101 N. C., 251, and *Coor* v. *Smith*, *Id*. 261, inconsistent with what is decided in this case, and to that extent they are overruled.   In my judgment, such suggestion is unfounded. Those cases were well considered by the Court, and, I think,

correctly decided. The application of the law in them is sustained by reason and the authorities cited, and many others that might have been cited; and they are not inconsistent with, certainly, the substance of what is decided in this case.

In *Brewer* v. *Chappell, supra,* it is held that a mortgagor, in possession of the land, after the condition of the mortgage is broken, had no right to give an "agricultural lien" upon a prospective crop to be made on the land, as against the mortgagee, in the absence of a contract allowing him to do so, upon the ground that, at law, the mortgagee is the owner of the land, and the mortgagor remaining in possession after condition broken, in the absence of agreement to the contrary, is not in possession, as of right, but by permission of the mortgagee; his possession is that of the mortgagee, and the latter might turn him out of possession at his will and pleasure, without notice. *Coor* v. *Smith, supra,* rests upon the same principle. The *equitable rights* of the mortgagor were not adverted to in these cases, because it was not necessary to do so, and because such rights of the mortgagor are subject to the rights of the mortgagee, until the mortgage debt shall be discharged. Such is certainly the settled law of this State.

In *Williams* v. *Bennett,* 4 Ired., 122, Chief Justice RUFFIN said, that "the mortgagor was concluded by his deed; and after its execution his possession is by consent of the mortgagee, and is, in law, his possession." In *Jones* v. *Hill,* 64 N. C., 198, Justice RODMAN said: "If a mortgagor remains in possession after the forfeiture of the property, he remains only by permission of the mortgagee. In such case, the mortgagor has been sometimes called a tenant at will or sufferance, and sometimes a trespasser, but he is properly neither; his position cannot be more correctly defined than by calling him a mortgagor in possession, but he may be ejected at any time by the mortgagee, without notice. The

mortgagee is entitled to the estate *with all the crops growing on it.* There is no injustice in this, because the land, including all the products, is a security for the mortgage debt, and, to that extent. the property of the mortgagee. The mortgagor has no right to make a lease to the prejudice of the mortgagee; the lease is void if the mortgagee elects to hold it so. If the mortgagor could lease, he might altogether defeat the claim of the mortgagee." He cites many authorities in support of what he thus said. *Fuller* v. *Wadsworth,* 2 Ired., 263; *Whitehurst* v. *Gaskill,* 69 N. C., 449; *Hill* v. *Nicholson,* 92 N. C., 24; *Johnson* v. *Prairie,* 94 N. C., 773; *Dail* v. *Freeman,* 92 N. C., 351, recognize the same principle.

The same principle applies in the case of vendor and vendee—the latter in possession, being, in most important respects, on the same footing as the mortgagor in possession. *Allen* v. *Taylor,* 96 N. C., 37, and the cases there cited.

The decision in this case, as I understand it, does not contravene the rule of law as thus settled in this State. It plainly recognizes the right of the vendor, in the absence of any contract, express or implied, to the contrary, to take possession of the growing—the unsevered—crop made by the vendee, and the equitable right of the latter to have the same devoted to the payment of the debt of the former, so far as it may be adequate. It further decides that, when the vendor allows the vendee to remain in possession of the land, and make a crop and *sever* the same, the former cannot recover the *severed* crop from the latter or third persons, and this rests upon the ground of the presumed assent of the vendor to allow the vendee to make and take the crop. The like rule applies to mortgagee and mortgagor. To allow the vendee or the mortgagor to encumber the crops at their will and pleasure, to the prejudice of the vendor or mortgagee, they might, as was said in *Jones* v. *Hill, supra,* "altogether defeat the claim of the mortgagee."

The statute (Acts 1889, ch. 476) changes the law so as to allow vendees and mortgagors in possession of the land to give "agricultural liens" as against vendors and mortgagees. It does not give them the right to so mortgage their crops for other purposes.

Error.