In the Matter of Golden Enterprises, Inc., Bankrupt.

GOLDEN ENTERPRISES, INC., and William E. Butner, Appellees,

v.

UNITED STATES of America, Appellant.

In the Matter of GOLDEN ENTERPRISES, INC., Bankrupt.

Joe CAGLE, Trustee in Bankruptcy for Golden Enterprises, Inc., Attorneys for the Creditors' Committee, James M. Gaither, Jr., Attorney for Bankrupt, Golden Enterprises, Inc., Bankrupt, William J. Lawing, C.P.A., and Charles B. Camp, Appellants,

v.

William E. BUTNER, Appellee.

Nos. 77–1138, 77–1151.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 4, 1977.

Decided Dec. 8, 1977.

---

Joe N. Cagle, Hickory, N.C. (Cagle & Houck, Hickory, N.C., on brief), and James M. Gaither, Jr., Hickory, N.C. (J. Carroll Abernethy, Jr., Hickory, N.C., on brief), for appellants in 77-1151.

Carleton D. Powell, Atty., Dept. of Justice Tax Div., Washington, D.C. (Gilbert E. Andrews and Crombie J. Garrett, Attys., Dept. of Justice Tax Div., Myron C. Baum, Acting Asst. Atty. Gen., Washington, D.C., and Keith S. Snyder, U.S. Atty., Asheville, N.C., on brief), for appellant in 77–1138.

William E. Butner, Hickory, N.C., for appellees in 77–1138 and 77–1151.

Before BRYAN, Senior Circuit Judge, and WINTER, Circuit Judge, and THOMSEN,* Senior District Judge.

WINTER, Circuit Judge:

The question we must decide is which of the mortgagee or the bankrupt estate is entitled to rents realized from mortgaged property between the time of the mortgagor's bankruptcy and foreclosure of the mortgage. On the facts before us, we hold that they go to the bankrupt estate. We reverse the district court and reinstate the disposition made by the bankruptcy judge.

## I.

Golden Enterprises, Inc. (Golden) was the owner of several parcels of real estate located in North Carolina on which first mortgages were given to several financial institutions and a second mortgage given to William E. Butner and others, whose inter-

---

* Roszel C. Thomsen, Senior United States District Judge, District of Maryland, sitting by designation.

ests Butner later acquired, to secure a debt of $360,000. Golden filed a petition in bankruptcy for an arrangement under Chapter XI of the Bankruptcy Act (11 U.S.C. §§ 701–799). It operated as a debtor in possession for a time, but a plan of arrangement was never confirmed. On February 14, 1975, the proceeding was transformed into a liquidating bankruptcy.

While the Chapter XI petition was pending, the bankruptcy court appointed an agent to collect Golden's rents and to apply them to the payment of the taxes, insurance, interest and principal payments due on the mortgages. When the straight bankruptcy ensued, the trustee collected the rents. The trustee made some authorized disbursements from the rents he collected. By direction of the bankruptcy court, however, he made no payments on the mortgages. After the authorized disbursements, the sum of $162,971.32 remained in the hands of the trustee and it is the fund which is the subject of this appeal.

The mortgages did not provide any security interest for the mortgagees in the rents. The mortgages were in default by the time that Golden was adjudicated bankrupt. At the first meeting of creditors, Butner requested that the property be abandoned to him subject to the first mortgages. The trustee was willing to accede to Butner's request, and the trustee suggested this procedure as one of several alternatives for winding up the bankruptcy since there were substantially no other assets for general creditors. He also suggested, as another alternative, a sale or foreclosure by him as trustee of the second mortgage—that is, a sale subject to the first mortgages with the lien of the second mortgage transferred to the proceeds of the sale. When the bankruptcy judge indicated a preference for the latter, the trustee formally sought and obtained authority for a public sale subject to the first mortgages, with the rights of other lienholders transferred to the proceeds of sale. Although the property sold, the district court, upon Butner's appeal, ordered a resale of the property with permission to Butner, if he was the successful bidder, to make payment by satisfying the debt due him in lieu of cash. Butner was the successful bidder at the second sale. The amount of the debt due him at that time was $360,000. He bid $174,000 for the properties and paid for them by consuming part of the debt due him, leaving a balance of $186,000 of the amount secured by his second mortgage unsatisfied.

The deed from the trustee to Butner provided that "[t]he accrued rents and the right to collect unpaid accrued rents from [the subject property] are hereby expressly not conveyed, but are reserved to the [trustee]." Although Butner never requested that the rents be sequestered for his benefit prior to the sale, he claimed, before the bankruptcy judge, that the unsatisfied debt due him ($186,000) should be given secured status and paid from the fund of net rents collected after bankruptcy was adjudicated. The bankruptcy judge rejected the contention and ruled that the order of sale transferred the lien of the second mortgage to the proceeds of sale and that Butner should be treated as a general creditor with respect to his unsatisfied security interest. The district court, however, ruled that, notwithstanding the absence of a provision in the second mortgage relating to rents before foreclosure and Butner's failure to seek a sequestration of the rents for his benefit, Butner was entitled to the fund. It reached this conclusion on both legal and equitable grounds.

The trustee and creditors, including the United States (with claims for unpaid taxes amounting to approximately $50,000), appealed. We think the bankruptcy judge was correct. We therefore reverse the district court's order and remand for reinstatement of the bankruptcy judge's determination.

## II.

The question of a secured creditor's right to income generated by the secured property during bankruptcy has produced a split of opinion among the circuits. Although we have not ruled on this issue, a recent opinion by Judge Haynsworth in *Fidelity*

*Bankers Life Insurance v. Williams*, 506 F.2d 1242, 1243 (4 Cir. 1974), ably summarizes the two competing theories:

> Other courts of appeals have disagreed about whether a lien creditor is entitled to the income from property during bankruptcy administration. . . . Some courts, notably the Third and Seventh Circuits, hold that a secured creditor may recover the rental income. . . . Those courts view the issue as a contest between the secured creditors and the unsecured ones for whom the bankruptcy court operates the estate. Since the rental income is additional security for the mortgage loan, the Third and Seventh Circuits equitably shift the income from the unsecured to the secured creditors.
>
> Other courts of appeals, including the Eighth and Ninth Circuits, reject this approach. . . . Those authorities have found that the mortgagee has no right to the rents because, under the mortgage terms, state courts require the mortgagee to take possession in order to fix his right to the rents. A mortgagee, however, cannot take possession and collect rents once the bankruptcy court has assumed control of the property. Accordingly, those courts substitute other actions to secure rights in the rental income for the contractual entry of possession and collection of rents. If the mortgagee has petitioned the bankruptcy court for a sequestration order, obtained the appointment of a receiver to collect the rents, or secured the court's consent to foreclose, the Eighth and Ninth Circuits allow him to recover the rental income during the bankruptcy administration. *See, e. g.,* *Pollack v. Sampsell*, 174 F.2d 415 (9th Cir. 1949); *Mortgage Loan Co. v. Livingston*, 45 F.2d 28 (8th Cir. 1930); 4A Collier, *supra* § 70.16, at 161–63.

 We now align ourselves with the Eighth and Ninth Circuits. Their view seems preferable because it best ensures that the outcome in federal court will parallel the result that would obtain in state court had bankruptcy proceedings not been instituted. We look to see what Butner's rights were under state law and whether he took steps which are the analogue of what state law requires.

## III.

 Under North Carolina law, absent a special provision giving the mortgagee a right to receive the rents, a mortgagee must take possession of the mortgaged property in order to be entitled to the rents which issue therefrom. *Gregg v. Williamson*, 246 N.C. 356, 98 S.E.2d 491 (1957); *Kistler v. Development Co.*, 205 N.C. 755, 172 S.E. 413 (1934); *Killibrew v. Hines*, 104 N.C. 182, 10 S.E. 159 (1889). Butner's second mortgage gave him no right to the rents before foreclosure, and because of the bankruptcy he did not, of course, take possession of the mortgaged property. We turn then to the steps he took before the trustee's sale.

 The record reflects no request by Butner during bankruptcy for a sequestration of rents or for the appointment of a receiver. The district court found that such a request "would have been an exercise in futility . . . since that was already being done," but this statement is erroneous. Of course, there had been a receiver until the adjudication in bankruptcy and he had applied the rents collected, *inter alia*, to the payment of interest and principal on the mortgages. But the adjudication of bankruptcy and the appointment of a trustee terminated the prior receivership, Bankruptcy Rule 201(a), and thereafter the trustee collected the rents for the bankrupt estate. Moreover, he was specially instructed by the bankruptcy court not to make any mortgage payments. Manifestly, what the district court thought was being done was not being done; and had Butner desired it to be done, it was incumbent on him to make a specific request for the appointment of a receiver and the sequestration of rents.

Similarly, the record reflects no formal action on the part of Butner to proceed with foreclosure in compliance with Bankruptcy Rule 701. He had, of course, made several informal requests that the property be abandoned, but when they were not

granted he pursued the matter no further. Indeed, he made such a request of the bankruptcy judge at a time after the adjudication, when approximately $50,000 in rents had been collected by the trustee; but at that time he stated he would waive any claim to the accrued rents. When the trustee formally requested authority to sell the property, Butner was made an adversary party to the request. He filed no answer, although he could have requested abandonment, permission for him to foreclose under state law, or a determination of the priority of his lien on the rents. In short, we can find no sufficient indicia that Butner would have proceeded to assert a security interest in the rents had bankruptcy not ensued.

## IV.

The district court, in reversing the order of the bankruptcy judge, stated, "the Court finds no difficulty in determining that equity required that rents collected under the circumstances of this case should go to the secured lienholders rather than to unsecured creditors." The difficulty that we have is that the district court failed to articulate the equitable considerations that it thought required the result that it reached.

■ Our examination of the record does not persuade us that there is any significant equitable consideration which requires a resolution of the dispute in favor of one party over another. Butner ostensibly lost on his second mortgage. Yet we are told that he has profited from ultimate disposition of the property. If the fund inures to the benefit of the bankrupt estate, it may well be, as the district court feared, that it will be largely consumed by attorneys' fees; yet the record reflects that substantial legal services were performed.

We therefore think that the decision should proceed from the legal considerations discussed in Parts II and III hereof. If equity has a part in the resolution of a question of this type—an issue on which we express no view—equity does not supply the answer here.

*REVERSED AND REMANDED.*

BRYAN, Senior Circuit Judge, dissenting:

I would affirm on the discriminating opinion of the District Judge, *In Re: Golden Enterprises, Bankrupt*, No. ST–B–73–6 (November 16, 1976).

Despite the recital of other reasons, the majority decision actually turns on the single axis: that appellee, the second mortgagee, failed to renew *"during bankruptcy"* a request made during the arrangement phase for a sequestration of rents for his benefit. The term "bankruptcy" is used in its technical reference to the *stage* of the case after adjudication of bankruptcy upon failure of the arrangement plan.

## I.

This point was initially made at trial by the appellants, but overruled by the District Judge for the reason that the requirement of a second request would have been the exaction of a procedure he deemed futile, that is, useless as unnecessary "since that was already being done", i. e., it had been sought and ordered by the Bankruptcy Judge. But the majority terms this statement erroneous because, although this had occurred in the arrangement proceeding, the request had not been renewed after the adjudication, hence not "during bankruptcy". The facts, I think, sustain the District Judge and reveal the majority as sacrificing substance to form, for in regard to the request and order, there was no such decisive break in the two stages of the case as to warrant this sacrifice.

On May 4, 1973, the petition for an arrangement was filed by Golden Enterprises and on June 27, 1973 Joe N. Cagle was appointed "standby trustee", that is, to serve as trustee in bankruptcy in the event of the failure of the arrangement plan, as authorized by the statute, 11 U.S.C. § 738. Thereafter, April 17, 1974, the Debtor's attorney moved the Bankruptcy Judge "for an Order appointing a named individual to function as agent in collecting rental income of Golden Enterprises, Inc. and apply-

ing the funds to those debts approved for payment by this Court". The next day the order was entered naming Simon Joseph Golden as agent "to collect rents and to apply the proceeds under the supervision of the Court". Among the applications so ordered was one to the "5. Interest and principal on secondary mortgages" which, of course, included appellee Butner's mortgage. Further, the agent was directed not only to file monthly reports to the Court, but also to the "second mortgage holders", of his receipts, expenditures and "accumulations".

No modification of this order occurred before the adjudication of bankruptcy which was made 10 months later, February 14, 1975. Therein Joe N. Cagle was appointed trustee of the property of the Debtor. As heretofore noted, he had been named earlier to occupy this position and did so throughout the filing of the request for an agent to collect rents and the use of them towards payment of the principal and interest of the second mortgage. Highly significant, moreover, is that the trustee after adjudication was directed, *inter alia*, "to collect and receive all rents . . . and to hold and retain all moneys thus received to the end that the same may be applied under this or *different* orders of this Court . . . ." This included, of course, the sequestration order—as a "different" order—for it emanated from the same court in a component of the same suit.

True, Bankruptcy Rule 201 provides that the appointment of a receiver (agent here) shall be terminated when the trustee qualifies. However, this termination does not wipe out the *request* for the sequestration; nor does it annul the *order for the application* of the rents to the second mortgage. Only the collector is changed, but that change would not alter the rights of a creditor which were fixed by an order during the arrangement stage. The agent would simply be supplanted by the trustee. The first order has equal standing, by virtue of 11 U.S.C. § 752, of any order entered in a voluntary bankruptcy case after adjudication, and a petition for an arrangement is the equivalent of a petition for voluntary bankruptcy. 11 U.S.C. §§ 752 and 778(a)(2). Thus this order remained intact and no reassertion of it was demandable.

With deference I suggest that the majority misconceives the operation of the arrangement provisions, contending that what is ordered during that period is vacated or nullified by the subsequent adjudication. As just mentioned this is gainsaid by the statute, § 752, declaring that an order passed therein before adjudication, has the same standing as one passed in a voluntary bankruptcy after adjudication. In truth, there is but a single proceeding. The arrangement phase is simply a prefatory consideration in relation to bankruptcy. The same petition at once serves both; the trustee for both is chosen at the commencement of the arrangement; and both are simultaneously considered by the Bankruptcy Judge. Hence orders are frequently common to both.

## II.

Appellee Butner is chided in the majority opinion for not taking "formal action" to obtain foreclosure of his mortgage by an adversary proceeding under Bankruptcy Rule 701. Likewise, he is taken to task for not filing an opposing answer to the trustee's application to sell the property. Both of these reprovals are extinguished by the fact that, as the majority earlier noted, Butner had already asked for abandonment of the property to him subject to prior mortgages. It was in this context that he stated he would waive any claim, as the majority would point up; manifestly, his business judgment taught that the abandonment of the property to him was more advantageous than the benefits to be derived from the rentals. Instead of ordering abandonment, the trustee obtained authorization to sell the property at public auction, which he did. Surely, again, further action by Butner would have been futile.

## III.

Finally, the proposed opinion notices the District Judge's statement that "the Court

finds no difficulty in determining that equity required that rents collected under the circumstances of this case should go to the secured lienholders rather than to unsecured creditors". Rather than to dispose of the considerations in the mind of the District Judge by simply referring to his failure to articulate these equities, I would remand for a hearing on them. Particularly in respect to equities, I would not charge Butner with any success he may have had with the property after he had bought it and it was out of the case.

For the foregoing reasons I cannot join in the majority opinion.