## J. R. JONES v. WILSON BOYD.

*Province of Supreme Court—Vendor and Purchaser—Provisional Remedy.*

1. A motion for an injunction being an application for equitable relief, it is the right and duty of the supreme court, under the present constitution, (art. iv, § 8,) on an appeal from an order granting or refusing the injunction, to determine the questions of fact as well as of law upon which the propriety of the order depends.

2. Where a contract is made for the sale of land, the purchase money to be paid in annual installments, and the vendee is let into possession, the vendor cannot maintain an action for specific performance until the last payment is due; and an injunction or order for a receiver as ancillary to the action must be vacated when the principal remedy is prematurely sought.

3. Where, under such a contract, the purchaser makes default as to the first or any intermediate installment, the vendor may bring ejectment and *then* apply for any provisional remedy which may be necessary.

(*Heilig* v. *Stokes*, 63 N. C., 612 ; *Gillis* v. *Martin*, 2 Dev. Eq., 470 ; *Ellis* v. *Hussey*, 66 N. C., 501 ; *Harshaw* v. *McKesson, Ibid.*, 266 ; *Butner* v. *Chaffin*, Phil., 497 ; *Carson* v, *Baker*, 4 Dev., 220 ; *Love* v. *Edmonston*, 1 Ire., 153, cited and approved.)

MOTION for an Injunction and appointment of a Receiver, heard at Chambers in Asheville on the 10th of August, 1878, before *Henry, J.*

The facts appear in the opinion.   His Honor granted the motion and the defendant appealed.

*Mr. J. H. Merrimon*, for plaintiff.
*Messrs. M. E. Carter* and *Reade, Busbee & Busbee*, for defendant.

SMITH, C. J.   On the 11th of July, 1878, the plaintiff issued his summons demanding specific performance according to the complaint to be filed, and four days thereafter ap-

plied to the judge of the district for the appointment of a receiver and for a restraining order. In the affidavit on which the application is based, the plaintiff states that early in the year 1875 he contracted with the defendant to sell him a tract of land containing thirty acres, at the price of five hundred dollars, to be paid in five annual instalments, and to make title when all the purchase money was paid; and that in pursuance of said agreement the defendant executed his five several notes, payable at the end of the successive years thereafter, the last falling due on the 1st of January, 1880.

The plaintiff gave a title bond to the defendant, a copy of which is set out in the course of the subsequent proceedings, the concluding clause of which is in these words: "Now if J. J. R. Jones do make, or cause to be made, a good and sufficient title to the above-named piece of land, when the above-named Wilson Boyd makes his last payment which is to be made on the 1st day of January, 1880, then this obligation to be void and of no effect; otherwise to remain in full force of law."

No complaint has been filed disclosing the plaintiff's cause of action, but in the *summons,* in the plaintiff's *affidavit* and in the *statement of the case* on the appeal, it is described as *an action for specific performance,* and the relief asked is an order restraining the defendant from committing waste and spoil, and the appointment of a receiver to take possession of the land. What is transmitted as the case on appeal, is little else than a recapitulation of what is contained in the record, with copies of the conflicting affidavits read on the hearing of the motion, and the order of appointment. If in order to the reversion of an interlocutory decree made pending the suit and auxiliary and incidental only to its main object, it is necessary to eliminate and present the facts apart from the evidence upon which the decree is founded, the appeal could not be sustained. But such has not been the ruling

nor the practice in this court in such cases, as is shown by the decision in *Heilig* v. *Stokes,* 63 N. C. 612, and in numerous other cases, in which upon the pleadings and evidence the court has assumed and exercised jurisdiction and determined the appeal. But whatever doubt may have previously existed as to the soundness of the distinction drawn in the opinion of the court in *Heilig* v. *Stokes,* between "issues of fact" and "questions of fact," as affecting the appellate power of this court, when that case was decided, it is removed by the express words of the recent constitutional amendment, which enlarges and restores jurisdiction over both, as it was possessed and exercised before the adoption of the constitution of 1868. Without undertaking to define the limits to which our appellate power is carried by this change, it is sufficient to say it embraces the present appeal and requires us to re examine the evidence and to determine the facts as well as the law arising thereon, in revising the subject matter of the appeal.

Under the former system of procedure, this court was invested with authority to review the decrees, final or interlocutory, of the *courts of equity* and the evidence upon which they were rendered, and in case of reversal to exercise original jurisdiction itself. The case whether upon appeal or reversal was heard upon written and documentary proofs only, according to the well established practice in courts of equity, and consequently this court had before it all the means for arriving at a correct decision which the court below had: *Gillis* v. *Martin,* 2 Dev. Eq. 470. In courts of law it was otherwise, and on appeals from them, only errors of law were subject to correction. This distinction must be kept in view in giving effect to the language of the amended constitution.

The order is an exercise of equitable power, and this appeal must be governed as far as practicable by the rules applicable to an appeal from an interlocutory decree of a

court of equity, and disposed of upon the evidence heard in the court below. *Gillis* v. *Martin, supra.* But these matters are not necessarily involved in deciding the case.

The action for specific performance cannot be maintained by either party to the contract,—not by the plaintiff because two of his notes were not due when he commenced his action, nor by the defendant because until he has made full payment he is not in condition to demand a conveyance of the land.

The relation between vendor and vendee in an executory agreement for the sale and purchase of land, is substantially that subsisting between mortgagee and mortgagor and governed by the same general rules. In both cases the legal title to the land is held as a security for the debt, to be conveyed or reconveyed to the owner of the equitable title when the debt is paid. "A vendor," says RODMAN, J., in *Ellis* v. *Hussey,* 66 N. C., 501, "who contracts to convey on payment of the purchase money, may be considered as between the parties a mortgagee." Keeping the analogy in mind it would seem that the right of the legal owner to have possession and a foreclosure by sale after final default must be the same in both cases.

In *Harshaw* v. *McKesson,* 66 N. C., 266, the mortgage sought to be foreclosed fixed the time of payment of the secured debts in equal instalments at three, four and five years, and some of them had not become due. DICK, J., delivering the opinion in the case uses this language: "A court of equity will never decree a foreclosure until the period limited for payment of the money be passed, and the estate in consequence thereof forfeited to the mortgagee; for it cannot shorten the time given by express covenant and agreement between the parties, as that would be to alter the nature of the contract to the injury of the party affected. 3 Pow. Mort., 965."

"The plaintiffs if they had seen proper might have pro-

ceeded in an action at law to recover the instalments as they became due, but they could not have a foreclosure until the day of redemption was passed."

Plainly the plaintiff in like manner is precluded from demanding a premature sale of the land, because by the express words of his bond, the final default cannot occur before the first of January, 1880, after which the sale may be decreed.

We treat this as a proceeding for foreclosure and sale, and the restraining order and appointment of a receiver as subsidiary and incidental to the main relief, not themselves the object of the suit; since a specific performance of the contract to pay the purchase money, unless by the defendant's voluntary act, in the absence of other property liable to execution, can only be enforced by a sale of the land and applying the proceeds to the payment of the debt.

But it may be asked, is there no remedy in such a case? Undoubtedly there is a remedy, but it is not that which the plaintiff is now pursuing. The defendant so far as appears, is not in possession under any contract by which he may rightfully withhold the land from the plaintiff. He has the same remedies which are open to any one else who is wrongfully deprived of the possession of land, and while prosecuting his action to recover possession, may have the ancillary aid of an injunction or other appropriate order to protect the property from waste and injury by an insolvent defendant, pending the suit.

"The mortgagor," says Mr. Coot, "is liable to eviction by the mortgagee without any notice whatever, unless protected by the agreement for quiet possession until default." Coot on Mort. 332, 339.

To the same effect is *Butner* v. *Chaffin*, Phil. 497, wherein READE, J., says: "It must now be regarded as well settled in this state that when a person is let into the possession of a tract of land, under a contract of purchase, he is but a

mere occupant at the will of the vendor, until the purchase money is paid. The vendor may put an end to this occupancy at any moment by demanding the possession, under a reasonable notice to quit, and if it be not surrendered, he may then maintain an action of ejectment," citing in support of the proposition the cases of *Carson* v. *Baker*, 4 Dev. 220, and *Love* v. *Edmonston*, 1 Ire. 153.

As the plaintiff has and may assert his full ownership over the property, he has the same redress as any other owner of land against one who wrongfully withholds possession from him. There is error in the interlocutory order and it must be reversed.

Error.                                   Reversed.