JAMES E. DOOLEY *et al.,* Receivers *vs.* IRA B. STILLSON.

FEBRUARY 26, 1925.

PRESENT:   Sweetland, C. J., Stearns, Sweeney, and Barrows, JJ.

BARROWS, J. Action of assumpsit. Plea, general issue under which defendant sought to recoup damages to an amount equivalent to plaintiffs' partial payment on account. The case is before this court on exceptions to direction of a verdict for defendant by the Superior Court.

Plaintiffs are receivers of a dissolved copartnership which had entered into a written agreement with defendant to purchase for $15,000 a farm, household supplies, crops, stock, farming implements, tools, wagons and harnesses on September 9, 1919. Pursuant to its terms $6,000 was then paid on account and the balance was to be paid in $2,000 cash and a mortgage for $7,000 on January 2, 1920, when plaintiffs were to receive a deed. The contract contained no provision in case of breach by vendees that the $6,000 should be forfeited or considered as liquidated damages to the vendor. Time was not declared to be of the essence of the contract, nor was there any clause giving the vendor the right to repossess himself of the real and personal property or to resell. Possession pursuant to the contract with unlimited right of use and consumption of the personal property and disposal of the crops was delivered to vendees

at or about the time of the original agreement. Defendant ceased thereafter to exercise any control over the personal property, the farm or management of operations thereon, and thereafter vendees dealt with the entire property, real and personal, as if it were their own.

The declaration alleges that the contract was broken by the buyer's inability to secure the $2,000 and avers that the seller after the buyer's breach declared the contract null and void and retained the money paid on account of the purchase price. This suit is for recovery of that payment.

On the farm when sold were 45 tons of hay, 500 bushels of corn, 3 horses, 3 cows, 8 pigs and 50 hens; 350 bushels of potatoes were dug by vendees and ripening fruit on the trees consisted of 600 bushels of apples and 25 bushels of pears.

The vendees did not make their payment on January 2nd and on January 23rd vendor, by his attorney, served notice upon vendees that unless the contract was completed on January 29, he would repossess himself of the property and "take such further steps as may seem necessary to protect my rights." Vendor did not repossess himself at that time, however. One of the vendees, a Mr. Barba, continued in possession until late in May, 1920. On May 18th an auction sale by vendor of both the real and personal property then remaining was attempted but not completed as to the real estate owing to failure to receive a bid of more than $7,500 for which amount the vendor was unwilling to permit the farm to be sold. The greater portion of the personal property transferred by the contract had been sold prior to this auction and the balance then remaining brought $943. Barba still lived on the farm. On May 25th defendant gave Barba notice to quit in the form usual from landlord to tenant in this state. Barba quit within a few days thereafter. Defendant took possession of the real estate. He thereafter advertised it for sale in his own name and put up a "For Sale" sign on the premises without consulting

vendees. Vendor held the premises until September 8, 1920, at which time he conveyed the real estate at private sale to one Peckham for $9,000 giving the usual warranty deed. The testimony was that this was a fair price for the farm.

The trial court directed a verdict for defendant, holding that vendor had not rescinded the contract by repossession and resale; that for a rescission there must be actual or implied intention and assent on both sides; that after a buyer's breach the seller, both in cases of sales of real estate and personal property, could resell; that the difference between the original contract price and the resale price was an element of vendor's damages and that the evidence here disclosed damages to defendant in excess of the $6,000 for which plaintiffs sued.

1. Did the lower court err in holding as a matter of law that the contract was not rescinded? Rescission is not merely a termination of contractual obligation. It is abrogation or undoing of it from the beginning. It seeks to create a situation the same as if no contract ever had existed. It differs from a breach of contract by abandonment or repudiation by one party, so recognized by the other. For rescission there must be mutuality, expressed or implied. Mere recognition that the contract has been broken is not rescission. The mutuality essential to rescission may be found to exist if, after breach of contract or abandonment by one party, the other by word or act declares the contract rescinded. Black on Rescission and Cancellation, Sec. 1, and Sec. 6.

An implied rescission is as effective as an express one. 39 Cyc. 1356. An attempted restoration of the *status quo* is an essential part of rescission. No express declaration of rescission existed in the present case. If rescission is found it must be implied from circumstances. The acts of vendor to which vendees made no objection, viz., giving the notice to quit, taking possession and offering the property for sale followed by actual sale, are urged as conclusive evidence of

rescission. Plaintiffs claimed (a) that if the contract were not rescinded vendees still had the right to demand specific performance; that vendor's resale had rendered performance impossible and therefore the contract had been rescinded; (b) that without rescission the vendor could make no conveyance of vendees' equitable title, except through the intervention of a court of equity, and (c) that the warranty deed definitely concluded a chain of circumstances whereby the vendor was precluded from performance of his part of the contract and showed a definite intention to rescind. Neither contention is sound.

(a) Vendees' own conduct would bar them from securing specific performance.

(b) It is true that the language in some of the cases refers to vendor as holding the legal title as security for the payment of the purchase money and on default suggests equitable foreclosure as at times the only safe procedure (*Hansbrough* v. *Peck*, 5 Wall. 497), but the same court later said in *Jennisons* v. *Leonard*, 21 Wall. 302, that the nature of such transactions had become established; that the vendor retains the legal title for the equitable benefit of vendee to the extent of the amount paid on the purchase price; that the vendees' equitable interest may be terminated by voluntary relinquishment, or surrender of possession to vendor by vendee and thereafter vendor may resell the property and convey a complete title.

(c) Black on Rescission and Cancellation, Sec. 579, declares there is a presumption of rescission in sales of personal property when the seller reclaims or retakes possession after delivery because the vendee has not paid for it; that this presumption prevails unless there is evidence of intent to retake it for sale on the buyer's account. But "The mere fact that the purchaser of land under an executory contract makes default in his payments and either abandons possession or permits the vendor to resume possession, but without any agreement between them, does not operate as a rescission of the contract of sale." *Hart* v. *Stickney*, 41

Wis. 630; *Morris* v. *Derr*, 55 Kan. 569; *Seymour* v. *Warren*, 114 App. Div. 813; *Batson* v. *Johnson*, 162 Ala. 411. Evidence of intent to rescind may be found from all the circumstances in a case. A resale of land often has been held to be a rescission as has likewise bringing ejectment proceedings and the giving notice to quit followed by quitting. 39 Cyc. 1388. In *Pierce* v. *Staub* 78 Conn. 459, a case tried without a jury, rescission was found on a state of facts some of which were like the present ones.

Most of the cases where rescission has been found were tried in equity or if at law to the court without a jury and it can not be known whether the question was treated as one of fact or law. As rescission, however, depends both upon the acts of the parties and the intention with which those acts are done, in a partly performed contract involving the sale of both real and personal property and especially where much of the latter is intended to be and has been consumed, we think the jury should determine whether there has been rescission. Black, Sec. 675. Intention is a question of fact. *Swift* v. *Rounds*, 19 R. I. 527. The contract here was entire. *Waite* v. *Stanley*, 92 Atl. 633. Rescission if at all was *in toto*. 39 Cyc. 1354. While in cases where the evidence is clear and unambiguous it is the duty of the court to decide whether or not a rescission has taken place as a matter of law, we are not satisfied that such duty existed in the present case. In spite of the presumptions there are circumstances indicating that the contract was never rescinded by the defendant. Neither notice to quit nor resale with warranty deed, alone or in combination, definitely established vendor's intent to cancel the contract *ab initio*. Both acts were consistent with vendor's adhesion to the original contract and an effort to realize on his security for its performance. *Rounds* v. *Baxter*, 4 Me. 454. He was at all times acting under legal advice. His first notice rather intimates that he intends to insist upon his contractual rights. The contract had been partly performed. It embraced both real estate and personal property. Possession

338

had been given. From the nature of the property much of it would be used up and when vendor took possession much of it had been consumed or disposed of. Farming implements had been broken or lost; the amount and value of the crops was not actually known to vendor; one of the horses had died; several pigs, all hens and considerable manure had disappeared, and it was known to defendant that the place was not being kept up. Restoration of the *status quo* was obviously impossible. Only money damages could compensate vendor as to a large portion of the subject matter of the contract. The case differed markedly from one where only real estate had been conveyed and the *status quo* could be restored fully by repossession of the land. Nothing that defendant did was so clear a rescission that the court should find as a matter of law that after vendees broke the contract vendor elected to try to reproduce the original situation instead of adhering to his rights under the definite original contract. With all the facts before it a jury might find either in favor of or against rescission. The question whether the contract had been rescinded should have been submitted to the jury. *Colt* v. *Selden*, 5 Watts (Pa.) 525; *Magaw* v. *Lothrop*, 4 Watts & Serg. (Pa.) 316; *Hoffman* v. *Titlow*, 48 Wash. 80, same case, 92 Pac. 888; *Morrow* v. *Rees*, 69 Pa. St. 368; *Rounds* v. *Baxter*, 4 Me. 454; *Hart* v. *Stickney*, 41 Wis. 630. The court erred in holding as a matter of law that the contract had not been rescinded.

2. In view of the fact that the same questions of damages which were discussed at length, both in the lower court and here, will arise again, we may properly indicate our view. If intention to rescind is found, the contract price was not an element in computing vendor's loss. He had retaken the specific land. He was entitled to recoup for any damage of omission or commission arising from vendees' use of the real estate, for use and occupation of the buildings, the value of the personal property sold, removed or consumed, depreciation in value of land whether due to failure to till or fertilize or care for the farm, or to general shrinkage in

value, destruction by vendees of trees, fences or walls, death or loss of animals, if due to fault of vendees; and, perhaps, other items not now occurring to us.

3. If, on the other hand, the jury should find that the contract had not been rescinded, there remain two questions: (a) Had the vendees any standing as plaintiffs and (b), if so, what is the measure of the vendor's damages in recoupment.

(a) The right of a defaulting vendee to recover a payment on account of the purchase price for real estate is denied in many jurisdictions. *Hansbrough* v. *Peck, supra; Dickinson* v. *Lee,* 106 Mass. 557; *Rounds* v. *Baxter, supra; Hart* v. *Stickney, supra.* Such holding is based upon the theory that the person breaking his contract has no standing to recover money paid thereunder.

By all courts a recovery is allowed if the contract has been rescinded; that is, abrogated and rendered as if it never had existed. *Peirce* v. *Staub,* 78 Conn. 459. It was upon such a theory that the plaintiffs' declaration was here drawn.

Another view is that vendee may recover the amount paid under the contract less the damages suffered by vendor by reason of vendee's failure to complete the contract. Keener, *Quasi*-Contracts, p. 230. Cf. *McKiernan* v. *Valleau,* 23 R. I. 501. Such a rule is based upon the equitable ground that vendor is entitled only to be made whole for vendees' default; that vendor is not entitled to a profit therefrom. This view is difficult to support on strict legal reasoning. Keener, *Quasi*-Contracts, p. 231, justifies vendees' action by importing into the contract a condition "implied in law" permitting suit in the absence of a contrary express condition in fact. A condition thus implied in law is a pure fiction, created to avoid the technical difficulty of allowing one who breaks a contract to sue upon it. The cases supporting the right to sue justify the action upon various grounds; some, that such suits are exceptions to the general rule and to be grouped with partly performed con-

tracts for personal service or partly performed building contracts. Still others base the defaulting vendee's right on the prevention of unjust enrichment of vendor; some seek to escape technical difficulties by holding that the suit is not on the express contract but on an implied contract. These overlook the consideration that while the express contract exists there can be no implied contract. *Rounds* v. *Baxter, supra.* Whatever reasons may be alleged the desirability and fairness of the result are clear. There is an instinctive revolt against making the vendor more than whole as a result of vendee's misfortune in being unable to complete his contract. In the present case court and counsel assumed correctly in the Superior Court that plaintiffs were entitled to sue even though the contract had not been rescinded. Cf. *McKiernan* v. *Valleau, supra.*

(b) The rule of damages to be applied was the chief matter in issue. Plaintiffs excepted to the admission of the contract. Such admission was not error. A vendor on vendee's default may resell either chattels (R. I. Gen. Laws, 1923, Chap. 308, Sec. 9), or real estate (8 L. R. A., N. S. 137). Vendor may recover the deficiency between the original sale price and resale price as to chattels and likewise as to real estate in judicial sales. (*Howison* v. *Oakley,* 118 Ala. 215; *Hill* v. *Hill,* 58 Ill. 239); in *quasi* judicial or auction sales generally (*Green* v. *Ausley,* 92 Ga. 647; *Ashcomn* v. *Smith,* 21 Am. Dec. 437; *Bowser* v. *Cessna,* 62 Pa. 148; *Webster* v. *Hoban,* 7 Cranch. 399). The courts imply an agreement into these sales that the difference between the original sale price and the resale price shall be the measure of damages. This court, however, in *McGuinness* v. *Whalen,* 16 R. I. 558, held that an auction sale by an administrator was not a judicial sale and that the difference between the first and resale price was not recoverable as liquidated damages; that the damage to vendor was the loss arising from vendee's default and might or might not be the difference between the contract price and the resale price.

In most jurisdictions where real estate has been sold at private sale and vendee fails to pay the balance of the purchase price, the right to recover the difference between the original and the resale price is generally denied. *Cowdery* v. *Greenlee,* 126 Ga. 786; *Griswold* v. *Sabin,* 51 N. H. 167; *Laird* v. *Pim,* 7 M. & W. 474; *Old Colony R. R. Co.* v. *Evans,* 6 Gray, 25; *Keitel* v. *Zimmermann,* 19 Miscl. 581; *Hazelton* v. *LeDuc,* 10 App. D. C. 379; *Kempner* v. *Heidenheimer,* 65 Tex. 587. In the latter case evidence of the resale price seven months after the default of vendee was admitted as one of the circumstances to show actual value at the time of the breach. All of the group of cases last cited lay down the rule of damages to be the difference between the price agreed upon and the actual or real value of the land at the time of the breach or within a reasonable time thereafter. That time may be the resale time. If the actual value exceeds the contract price the vendor can recover nominal damages only; if it is less, the vendor recovers the difference. The rule is the same as to placing a value on farm land as upon other land. It may be more difficult to apply but it is not impossible. The language of the dictum in *McKiernan* v. *Valleau,* at p. 506, is not that the measure of damages is the difference between the contract price and the resale price. It merely suggests what the authorities uniformly agree upon, viz., that vendor not in default may resell within a reasonable time and under proper conditions and recover from vendees any damage sustained by the latter's default. This suggestion of the court is in line with the cases just cited and with *McGuinness* v. *Whalen, supra,* and commends itself to us as a proper rule. The resale price in the circumstances disclosed on this record was one of the proper evidential facts in showing the actual value at the time of the breach. *McGuinness* v. *Whalen,* 17 R. I. 619. An expert testified it was the actual value also. If the contract had not been rescinded the court was justified in directing a verdict for defendant on the evidence presented.

Inasmuch, however, as the question of rescission should have been submitted to the jury the exception of the plaintiffs must be sustained and the case is remitted to the Superior Court for a new trial.

*Edward M. Sullivan, John J. Sullivan, Daniel A. Colton,* for plaintiffs.

*Frederick A. Jones,* for defendant.