JOE C. SCOTT v. ANDY FOPPE

(Filed 30 October, 1957)

1. **Vendor and Purchaser § 24—**

   Where the purchaser refuses or becomes unable to comply with his
   contract to purchase, he is not entitled to recover the amount there-
   tofore paid by him pursuant to the agreement.

2. **Same: Damages § 6—Doctrine of mitigation of damages does not con-
   stitute cause of action.**

   Plaintiff was under contract to purchase certain realty but became
   unable to comply with his agreement, and so advised defendant,
   whereupon defendant owner sold the property. Plaintiff instituted this
   action to recover the amount of money expended by him on the prop-
   erty pursuant to the agreement prior to his own breach, alleging that
   defendant failed to exercise due diligence in selling and could have
   sold to a prospect obtained by plaintiff at a price which would have
   avoided any loss. *Held:* Plaintiff's cause is based on the equitable doc-
   trine of mitigation of damages, which applies in proper cases to di-
   minish the amount of recovery by a plaintiff, but does not constitute
   a cause of action, and therefore nonsuit was proper.

3. **Vendor and Purchaser § 24: Contracts §§ 2, 4—Evidence held insufficient to show agreement of vendor to sell at price which would avoid loss to purchaser.**

> Plaintiff contracted to purchase certain realty upon which a house had been built for him. Prior to the time for performance plaintiff advised defendant he could not finance the purchase and suggested that the parties sell the property themselves, without the intervention of a real estate agent, so that each could get his money back. Plaintiff testified that defendant said, "let's see what we can get out of it," and that "we all agreed not to turn it over to a real estate dealer." Plaintiff's evidence further tended to show that defendant later sold the property through a real estate agent for an amount insufficient for plaintiff to recover the sums theretofore put into the property by him. *Held:* The evidence is insufficient to show a contract to sell at a price at which each of the parties could get back all money put into the property, and further, if such contract had been entered into, there was no evidence of any consideration to support it.

APPEAL by plaintiff from *Sharp, Special Judge,* June Special Civil Term 1957 of MECKLENBURG.

This is a civil action to recover from the defendant for certain losses alleged to have resulted from the failure of the defendant to mitigate damages.

On or about 19 August 1955 the plaintiff contracted with the defendant and one H. H. Brecht to buy for him Lot No. 1 in Block H, Sherwood Forest, Section 2, in Sharon Township, Mecklenburg County, known as 5201 Addison Drive, for the sum of $5,000, and to construct a house thereon for the plaintiff according to his plans and specifications. Plaintiff agreed to pay the defendant and Brecht $5,000 for the lot (title to which the defendant took in his name) and to pay the actual cost of the construction of the house, plus ten per cent of the actual construction cost as a profit to the builders. (Mr. Foppe financed the project and Mr. Brecht was the contractor.) Upon completion of the house and payment therefor the property was to be conveyed to the plaintiff.

The plaintiff alleges that, pursuant to said agreement, he paid for certain work and materials that went into the construction of the house, including $1,000 on the lot, the sum of $3,954.54, and for certain appliances placed in the house, the sum of $1,276.16, making a total expenditure of $5,230.70.

About the middle of February, and before the completion of the house the latter part of February or the first part of March 1956, the plaintiff informed the defendant and Mr. Brecht that he would not be able to comply with the terms of his contract. He alleges in his complaint that he notified the defendant and Mr. Brecht of his inability to carry out his contract, whereupon "it was agreed between all three parties that each personally

without the aid of a real estate broker, would try to sell the property and that the highest net offer would be accepted so that each of the parties would get their money back, with the plaintiff taking the first loss should the highest net offer not leave anything for him after the defendant and Mr. Brecht * * * recovered their money, plus Mr. Brecht's 10% commission."

Plaintiff further alleges that he obtained a purchaser who was ready, willing and able to buy the property at a net price of $40,000 and to pay extra for the rugs, drapes, etc., purchased at the Mecklenburg Furniture Shops and for which payment had not been made.

The defendant in his answer alleges that the actual cost of the house and lot was $40,201.37 and that he paid this amount therefor in full. The defendant admits that in order to mitigate his own damages by reason of the breach of the original contract by the plaintiff, H. H. Brecht and the defendant agreed with the plaintiff to undertake to find a purchaser for the property at the best possible price, but denies that they agreed not to employ the services of a real estate agent.

The only evidence offered in support of the allegations in plaintiff's complaint was his own testimony together with certain exhibits. His evidence tends to show that he paid for various items of materials, fixtures, etc., that went into the house. He does not contend that the defendant and Mr. Brecht breached the original contract in any respect. In fact, he testified, "They fulfilled their contract and completed the house. But I was unable to purchase the house and breached my contract." He further testified that approximately a week after he found he could not carry out his contract, he found a purchaser who made a firm offer for his house, as a home for his son, in the sum of $40,000 and further agreed to pay the Mecklenburg Furniture Shops for the rugs, drapes, etc., which had been purchased for the house. This offer, the plaintiff testified, was made orally and submitted to the defendant and Mr. Brecht over the telephone, and the defendant informed the plaintiff "that Brecht said he doesn't want to deliver at that price, that we could get more money." About a week later, the defendant and the plaintiff went to see the plaintiff's prospective purchaser and offered him the property for $40,000 and they were informed by him that he was not interested; that he had made other arrangements for a home for his son. Finally, the property was sold on 16 May 1956 by the defendant and Mr. Brecht for $40,000 and they paid therefrom a commission of $1,250.00 to a real estate agent for making the sale, and $3,116.18 for the drapes, rugs, etc., purchased from the Mecklenburg Furniture Shops.

SCOTT v. FOPPE.

The plaintiff's testimony, bearing on the alleged contract for the sale of the house, was as follows: "I went to Mr. Brecht and Mr. Foppe and said I could not finance this house on account of the New York firm has failed to complete negotiations on my Company. I said let's try to sell the house and don't turn it over to a real estate agent. All of us can get our money out of it." Plaintiff further testified that the defendant in reply said, "* * * let's see what we can get out of it. We all agreed not to turn it over to a real estate dealer and we would work on it ourselves."

On cross-examination the plaintiff testified, "When I found out that I couldn't go through with the contract and I had to break it, I went to Mr. Foppe and Mr. Brecht and we talked over the situation. It was then agreed that in order to mitigate the loss to Mr. Foppe and Mr. Brecht that we would all try to find another buyer. It was agreed that the house would be sold with the equipment in it. * * * The equipment was all installed when I agreed to sell the house to another buyer for the highest price."

At the close of plaintiff's evidence the defendant moved for judgment as of nonsuit. The motion was allowed and from the judgment entered the plaintiff appeals, assigning error.

*J. M. Scarborough, for plaintiff appellant.*
*Blakeney & Alexander, J. W. Alexander, Jr.*
*Ernest W. Machen, Jr., for defendant appellee.*

DENNY, J. The amount which the plaintiff seeks to recover in this action, to wit, $5,230.70, is the exact amount he claims to have invested in labor and materials that went into the construction of the house, including $1,000 paid on the purchase price of the lot, plus the cost of certain appliances which were installed in the house.

It is settled law that where a party agrees to purchase real estate and pays a part of the consideration therefor and then refuses or becomes unable to comply with the terms of his contract, he is not entitled to recover the amount theretofore paid pursuant to its terms. *Rochlin v. Construction Co.,* 234 N.C. 443, 67 S.E. 2d 464; *Improvement Co. v. Guthrie,* 116 N.C. 381, 21 S.E. 952; 31 A.L.R. 2d 118, Anno.—Vendee's Recovery of Purchase Money; 55 Am. Jur., Vendor and Purchaser, section 535, page 927; 92 C.J.S., Vendor and Purchaser, section 554 (a), page 566.

In view of the facts disclosed on this record, it is clear that the plaintiff is not entitled to recover anything from the defendant as a refund of the amount paid under the contract before

its breach. However, the plaintiff contends in his brief that under these facts and circumstances, when it became known to the defendant that he was unable to carry out his contract to buy the house and lot, the defendant then owed him the duty to minimize or eliminate the damages. This contention is based on the claim that the plaintiff produced a purchaser who was willing and able to buy the property at a price which he contends, if the offer had been accepted, would have been sufficient to reimburse the defendant and the plaintiff for their respective investments in the house and lot.

We think the plaintiff has attempted to base his cause of action on the equitable doctrine of mitigation of damages, growing out of the breach of the original contract, and of an alleged breach by the defendant of a contract allegedly entered into by the parties with respect to the sale of the house and lot after plaintiff had breached the contract for the purchase of the property.

Ordinarily, the equitable doctrine of mitigation of damages is a defense to an action in which the plaintiff seeks to recover for damages allegedly caused by a breach of duty on the part of defendant and does not constitute a cause of action. As stated in Sutherland, Damages, Volume 1, 4th Edition, section 149, page 458, "Mitigation of damages is what the expression imports, a reduction of their amount; not by proof of facts which are a bar to a part of the plaintiff's cause of action, or a justification, *nor of facts which constitute a cause of action in favor of the defendant;* but rather of facts which show that the plaintiff's conceded cause of action does not entitle him to so large an amount as the showing on his side would otherwise justify the jury in allowing him." (Emphasis added.) See *Lane v. R.R.,* 192 N.C. 287, 134 S.E. 855, 51 A.L.R. 1114; *Johnson v. R.R.,* 184 N.C. 101, 113 S.E. 606, 25 A.L.R. 910; *Brewington v. Loughran,* 183 N.C. 558, 112 S.E. 257, 28 A.L.R. 1543.

Finally, as to the alleged contract to sell the property to a third party, after the plaintiff had informed the defendant and Mr. Brecht of his inability to purchase the property, and to accept the highest net offer so that each of the three parties, "would get their money back that had been put in the property," we do not think the evidence offered by the plaintiff is sufficient to show that such a contract was entered into, and we so hold. Moreover, if such a contract had been entered into, there is no evidence of any consideration to support it. *Jordan v. Maynard,* 231 N.C. 101, 56 S.E. 2d 26; *Stonestreet v. Oil Co.,* 226 N.C. 261, 37 S.E. 2d 676; *Coleman v. Whisnant,* 225 N.C. 494, 35 S.E. 2d 647.

As we have already pointed out, when the plaintiff breached his contract for the purchase of the house and lot, the defendant, under the facts disclosed on this record, was under no legal obligation to refund to him that portion of the consideration theretofore paid pursuant to the terms of the contract. Consequently, when the plaintiff breached the contract, the defendant and Mr. Brecht had the right to dispose of the property as they saw fit. However, if the defendant or Mr. Brecht should institute an action against the plaintiff to recover damages resulting from the plaintiff's breach of the original contract, the plaintiff would have the right to set up in mitigation of the damages claimed, the failure, if any, on the part of Mr. Foppe and Mr. Brecht to exercise due diligence in order to minimize the present plaintiff's loss by reason of his breach of such contract.

The judgment of the court below is
Affirmed.