DANIEL E. BRANNOCK AND WIFE, JEAN W. BRANNOCK, PLAINTIFFS, v. A. B. FLETCHER AND WIFE, LEXIE FLETCHER, DEFENDANTS.

(Filed 24 July, 1967.)

**1. Vendor and Purchaser § 1—**

As between the parties, the vendor may be considered a mortgagee and the purchaser a mortgagor, and ordinarily the purchaser is not entitled to possession until he has fully paid the purchase price, although by express or implied agreement he may be given the right to possession prior thereto.

**2. Same—**

The purchaser in possession is not liable for rent prior to default.

**3. Same—**

A purchaser in possession under agreement of the parties cannot be deprived of possession as long as he is not in default in the payment of the purchase price.

BRANNOCK *v.* FLETCHER.

**4. Same—**

Where prospective purchasers are given possession prior to the execution of the contract to purchase which recites the payment of a stated sum and stipulates monthly payments to be made each month thereafter, there is a necessary implication that the purchasers are entitled to possession of the property so long as they make the payments in accordance with the contract.

**5. Same—**

Agreement by the vendors that the purchasers might make up payments in default at the end of the contract period does not preclude vendors from invoking the acceleration provision of the contract when the agreement to defer the payments is not supported by a new and independent consideration.

**6. Same—**

Vendors may not invoke the acceleration agreement in the contract without first giving the purchasers adequate notice and reasonable opportunity to bring their payments up to date.

**7. Vendor and Purchaser § 10—**

The distinction between rescission, forfeiture, and the termination of an executory contract of purchase and sale because of the failure of the purchaser to perform his obligations, is important: rescission entitles each party to be placed *in statu quo ante*, requiring that payments made by the purchaser be refunded and that the vendors recover the amount of reasonable rents, while in the event of forfeiture or termination of the purchasers' contractual rights because of failure to make payments as stipulated, the purchasers would not be entitled to recover payments theretofore made.

**8. Same—**

Plaintiff purchasers' evidence tended to show that they were in possession of the property under an executory contract of purchase and sale, that defendant vendors wrongfully demanded that plaintiffs surrender the property at a time when plaintiffs were not in default, and that plaintiffs voluntarily surrendered the property. *Held:* Nonsuit was improperly entered in plaintiffs' action to recover payments made under the contract, since the evidence is sufficient to support a finding that the parties rescinded the contract, in which event plaintiffs would be entitled to recover the payments made.

APPEAL by plaintiffs from *Martin, S.J.,* 30 January 1967 Session of FORSYTH.

Action by vendee, instituted 15 July 1966, to recover payments made under a contract to convey realty.

In June or July 1961, by oral contract of purchase and sale, plaintiffs agreed to buy from defendants a certain house and lot. Plaintiffs entered into possession of the property, they say, on 1 July 1961; defendants say, 1 June 1961. On 13 November 1961, the parties executed a written contract for the purchase and sale of the

property at the price of $11,400.00. The agreement recited payment of $400.00 and a balance due of $11,000.00 to be paid at the rate of "$112.00 per month, each month hereafter." The contract provided:

> "(S)aid payment of $112.00 to be applied, first on the payment of interest at the rate of 6% per annum, and the balance to be applied on balance due under this contract, until the full sum of $11,400.00 and interest has been paid. Failure to make payments when due makes whole amount due and payable."

Except for a description of the property sold, the foregoing provisions constitute the entire written contract.

Plaintiffs allege that they completely performed their obligations under the contract; that on or about 1 June 1963 — when they had paid a total of $2,600.71 — defendant A. B. Fletcher informed them that unless they were able to obtain a loan on the property the next day, they would be required to vacate the house; that, being unable to obtain a loan, they moved out as ordered. They seek to recover the sum of $2,600.71, with interest, from defendants.

Answering the complaint, defendants admitted the execution of the written contract, but denied that plaintiffs performed their obligations under it. They allege that plaintiffs did not make the required payments; that they were constantly in default; that their total payments under the contract were $2,091.71; that they lived in the house, which had a reasonable rental value of $100.00 a month, for 25 months; that they voluntarily vacated the premises on 1 July 1963 at a time when they were $708.29 in arrears with their payments; that during their occupancy of the house they damaged it in the sum of $1,000.00; that for their 25-months' occupancy, plaintiffs owed them $2,500.00; and that, after crediting plaintiffs with the $2,091.71 paid, they still owe a balance of $408.29 for rent. Defendants seek to recover from plaintiffs this sum with interest, plus $1,000.00 in damages.

Upon the trial, plaintiffs' evidence tended to show: Plaintiffs moved into the house on 1 July 1961. At that time, they attempted to obtain a loan from Piedmont Federal Savings and Loan Association (Piedmont), which refused to deal with plaintiffs. Defendant A. B. Fletcher then obtained a loan "in his name." He told plaintiffs that they could probably get a loan on the property in their name in about a year and that he would keep it in his name until they could get one. On 13 November 1961, plaintiffs began making monthly payments of $112.86 to Piedmont, which applied $59.07 to the payment of Mr. Fletcher's loan on the property and deposited the balance of $53.79 in his savings account. Plaintiffs received two books

from Piedmont, "a savings book", and "a loan book." The payment page of the latter was entitled "A. B. Fletcher and Lexie A. Fletcher: Payments made by Danny Braddock (Brannock) Duplicate." Eventually, plaintiffs stopped paying anything into Mr. Fletcher's account at Piedmont and started paying him personally on his "second mortgage." Sometimes they were late in making those payments. Mr. Fletcher told plaintiffs that they should always make the payments to Piedmont even if they could not pay him. They missed paying him two or three months because of sickness. The latter part of May or the first of June 1963, Mrs. Fletcher told plaintiffs that he wanted them "to get the loan over to their names." Piedmont still refused to make plaintiffs a loan, and Mr. Fletcher told them that he wanted his house, and he wanted it the next day. Mrs. Fletcher extended the time until Saturday, and plaintiffs moved on that day.

At the time plaintiffs moved out of the house, Mrs. Brannock testified:

"(W)e had actually paid twelve hundred dollars on the loan to Piedmont. . . . I had it written in the book of the payments. . . . I do not know to the very penny the total amount we have paid on the house — to Piedmont Federal and Mr. Fletcher — all together. . . . Looking at the complaint refreshes my recollection as to how much we paid on the contract, and it is $2,600.71."

Mr. Brannock testified:

"During the time we were making these payments, we were not late to Piedmont. We were late to Mr. Fletcher on the second note because of sickness, and we would have to make it up at the end. . . . He did not, that I remember, ever demand that I catch up the payments in arrears."

According to the records of Piedmont, the Fletcher-Brannock loan required monthly payments of $59.07 and a total of $1,299.54 was paid. For the most part, the records do not show who made the payments, but they do reveal that three drafts were drawn on Mrs. Brannock for the months of April, May, and June 1963, and all were returned unpaid. When payments for these months were finally made, Mr. Fletcher's name was entered beside the May and June payments; Mrs. Brannock made the one for May. The sum of $1,299.54 represented payment at $59.07 for 22 months.

At the close of plaintiffs' evidence, defendants moved for judgment of nonsuit. The motion was allowed, and plaintiffs appealed.

*Harold R. Wilson; Alvin A. Thomas for plaintiff appellants.*
*Walter C. Holton for defendant appellees.*

SHARP, J.  Plaintiffs assign as error the dismissal of the action upon defendants' motion for nonsuit. We, therefore, consider the evidence in the light most favorable to them. *Mills v. Lynch*, 259 N.C. 359, 130 S.E. 2d 541.

Plaintiffs, as vendees in an executory contract for the purchase and sale of a residence from defendants, were in possession of the property when the contract was signed on 13 November 1961. The total purchase price to be paid was $11,400.00. Defendants acknowledged the receipt of $400.00, and plaintiffs agreed to pay the balance in installments of $112.00 "each month hereafter." The first payment, therefore, was due December 13, 1961. At the time plaintiffs moved out, shortly after 1 June 1963, a total of eighteen payments, or $2,016.00 should have been made. This sum (if paid), plus the $400.00 down payment, would have made a total of $2,416.00 paid on the purchase price.

Both plaintiffs testified that they did not know the exact amount which they had paid on the contract, but after refreshing her recollection from the complaint, however, Mrs. Brannock testified that plaintiffs had paid a total of $2,600.71. This sum would be $184.71 in excess of the amount due under the contract at the time defendants demanded possession of the property on or about 1 June 1963 and at the time plaintiffs complied with defendants' demands by voluntarily vacating the premises. Yet, both Mr. and Mrs. Brannock testified that they were two or three months in arrears with that portion of the $112.00 monthly payment which they were to make direct to Mr. Fletcher. They said that he had agreed that they could "make it up at the end." Notwithstanding, Mrs. Brannock also made the flat statement that plaintiffs had paid $2,600.71 on the house when Mr. Fletcher demanded possession, and that they "were not behind" with their payments at that time.

This state of the evidence, plus the minimal written contract, which patently does not embrace all the terms of the previous oral agreement between the parties and which does not stipulate the consequences of a default by either, necessitates a marshaling of legal principles which the briefs have not attempted. Since plaintiffs brought this action to recover the payments they had made, their theory necessarily is that defendants had rescinded the contract. Although the evidence discloses that their last payment was made more than three years before they brought this action, no question of the statute of limitation arises for the reason that the provisions

of G.S. 1-52 were not pleaded. G.S. 1-15; *Iredell County v. Craw-ford,* 262 N.C. 720, 138 S.E. 2d 539.

In a contract for the sale of land, the vendee may be given the right to possession prior to the conveyance of title either by the terms of the contract or by necessary implication. 55 Am. Jur., Vendor and Purchaser § 385 (1946). In the absence of any express or implied agreement to the contrary, however, the vendee has no right to the possession until he has fully paid the purchase price. *Allen v. Taylor,* 96 N.C. 37, 1 S.E. 462; Annot., Right of vendor and purchaser respectively to possession pending performance, but before default, of executory contract for sale of real estate, 28 A.L.R. 1069 (1924); 8A Thompson, Real Property § 4449 (1963 repl.).

"It is well settled, that the purchaser of land, when let into possession under a contract of purchase, is simply an occupant of it at the will of the vendor, and he so continues until the purchase money shall be paid. The vendor may at any time put an end to such occupancy by demanding possession, after reasonable notice to quit; and if it be not surrendered, then he may at once bring and maintain an action to recover the possession." *Allen v. Taylor, supra* at 39, 1 S.E. at 463.

*Accord, Jones v. Boyd,* 80 N.C. 258; *Dowd v. Gilchrist,* 46 N.C. 353; *Love v. Edmondston,* 23 N.C. 152; 55 Am. Jur., Vendor and Purchaser § 387 (1946). A vendee is not, however, such a tenant as may be evicted by summary ejectment under G.S. 42-26 (N. C. Pub. L. 1868-'69, ch. 156); *McCombs v. Wallace,* 66 N.C. 481; nor, in the absence of an express provision in the contract, is a vendee in possession liable for rent prior to default. The interest on the unpaid purchase price is in lieu thereof — *Mitchell v. Wood,* 70 N.C. 297; *Pearsall v. Mayers,* 64 N.C. 549 — for the sales price is presumed sufficient consideration for the intermediate occupation. 55 Am. Jur., Vendor and Purchaser § 363 (1946). *Cf. Jones v. Jones,* 117 N.C. 254, 23 S.E. 214. The payment by the vendee of the greater part of the purchase money makes no difference in the vendor's right to the possession of the property; "but if the vendee should afterwards file a bill in equity for specific performance, he will not only be allowed a credit for his payments, but also be entitled to an account of the profits of the land made by the vendor after he shall have recovered possession." *Butner v. Chaffin,* 61 N.C. 497, 498.

It has been held repeatedly that "the relation between vendor and vendee in an executory agreement for the sale and purchase of land is substantially that subsisting between mortgagee and mortgagor, and governed by the same general rules." *Jones v. Boyd, supra*

at 261; *accord, Crawford v. Allen* and *Realty Co. v. Crawford,* 189
N.C. 434, 127 S.E. 521; *Eubanks v. Becton,* 158 N.C. 230, 73 S.E.
1009; *Killebrew v. Hines,* 104 N.C. 182, 10 S.E. 159; *Allen v. Taylor,
supra; Hook v. Fentress,* 62 N.C. 229; 55 Am. Jur., Vendor and Pur-
chaser § 354 (1946). As between the parties, the vendor may be con-
sidered a mortgagee and the vendee a mortgagor. *Bank v. Loughran,*
122 N.C. 668, 30 S.E. 17; *Jones v. Boyd, supra; Ellis v. Hussey,* 66
N.C. 501.

At common law, a mortgagee, in his character as the legal owner,
was entitled to the immediate possession of the mortgaged premises
even before breach of condition unless this right had been waived or
it had been otherwise stipulated in the mortgage. Under the modern
equitable doctrines, however, the mortgagor is entitled to remain in
the possession of the property at least until breach of condition.
Formerly, the rule was frequently stated as follows: "It is familiar
learning that, *at least,* after default of the mortgagor in paying the
debt secured by the mortgage, the mortgagee is entitled to the pos-
session and is accountable to the mortgagor for rents and profits."
(Italics ours.) *Weathersbee v. Goodwin,* 175 N.C. 234, 235, 95 S.E.
491, 492; *accord, Bank v. Jones,* 211 N.C. 317, 190 S.E. 479; *Mon-
tague v. Thorpe,* 196 N.C. 163, 144 S.E. 691. More recently the rule
is stated with the phrase italicized above omitted. *Gregg v. William-
son,* 246 N.C. 356, 98 S.E. 2d 481; *Mills v. Building & Loan Assn.,*
216 N.C. 664, 6 S.E. 2d 549. Although a mortgagee in possession is
accountable for the rents and profits which he receives from the
premises, he may be made to account only in his action to foreclose
or in the mortgagor's suit to redeem or in connection with voluntary
payment. *Anderson v. Moore,* 233 N.C. 299, 63 S.E. 2d 641; 2 Jones,
Mortgages § 1426 (8th Ed., 1928); II Glenn, Mortgages § 216 (1943).

Like a mortgagor, a vendee who, by agreement with his vendor,
is in possession of the property under an executory contract of pur-
chase and sale cannot be deprived thereof as long as he is not in
default in the performance of his contract. 92 C.J.S., Vendor and
Purchaser §§ 461, 464 (1955); 55 Am. Jur., Vendor and Purchaser
§§ 438, 439, 444 (1946); Annot., When a vendor may recover posses-
sion from his vendee, 107 Am. St. Rep. 722 (1906); Annot., 94 A.L.R.
1239, 1263 (1935). It is implicit in the facts of this case that, not-
withstanding the lack of an express provision to that effect in the
written contract, plaintiffs were to have possession of the property.
They were buying a house to live in; they were in possession of it at
the time the contract was executed. At $112.00 a month, more than
8 years would have elapsed before they had paid for the property.
It is not reasonable to suppose that they would have contracted to

buy the house unless they had acquired, at the same time, the right to its immediate and continued possession. The necessary implication, therefore, is that plaintiffs were entitled to the possession of the property so long as they complied with the contract by making the payments as they came due. It is equally apparent from plaintiffs' evidence that the parties contemplated that, as soon as plaintiffs' debt had been reduced to an amount which they could finance, they would obtain a loan on the property and pay the purchase price in full. Until they could get a loan, however, defendants were obligated to carry the loan at Piedmont "in their names." No such provisions, however, were incorporated in the written contract. Therefore, plaintiffs were not legally obligated to procure a loan. *Neal v. Marrone,* 239 N.C. 73, 79 S.E. 2d 239. They were, however, obligated to make each monthly payment as it became due, and the failure to pay any installment in full made the entire unpaid balance due and payable.

Unless supported by some new and independent consideration, an agreement by defendants that they might miss several payments and "make it up at the end," would not abrogate the acceleration provision of the contract if defendants later decided to enforce it. *Products Corp. v. Sanders,* 264 N.C. 234, 141 S.E. 2d 329; *Craig v. Price,* 210 N.C. 739, 188 S.E. 321. Under the circumstances disclosed by plaintiffs' evidence, however, defendant could not declare the entire balance due without first giving plaintiffs adequate notice and a reasonable opportunity to bring their payments up to date. Annot., L.R.A. 1918B, 541, 547; 55 Am. Jur., Vendor and Purchaser § 625 (1946). Even though plaintiffs gave testimony tending to show (as their brief concedes) that they might be "behind in two or three of these payments," taking this evidence in the light most favorable to them, they were not behind in their payments when ordered to move. If, however, plaintiffs were behind in their payments (as defendants allege), and continue in default after reasonable notice, defendants would have been entitled to take possession of the premises without resorting to an action of ejectment — provided possession could be obtained peaceably. In such event, plaintiffs would not be entitled to recover back what they had paid.

> "It is settled law that where a party agrees to purchase real estate and pays a part of the consideration therefor and then refuses or becomes unable to comply with the terms of his contract, he is not entitled to recover the amount theretofore paid pursuant to its terms. *Rochlin v. Construction Co.,* 234 N.C. 443, 67 S.E. 2d 464; *Improvement Co. v. Guthrie,* 116 N.C. 381, 21 S.E. 952; 31 A.L.R. 2d 118, Anno. — Vendee's Recovery of Purchase Money; 55 Am. Jur., Vendor and Purchaser, section

535, page 927; 92 C.J.S. Vendor and Purchaser, section 554 (a), page 566." *Scott v. Foppe*, 247 N.C. 67, 70, 100 S.E. 2d 238, 240.

*Accord*, Annot., L.R.A. 1918B, 541; Annot., Vendee's right to recover amount paid under executory contract for sale of land, 59 A.L.R. 189, 194 (1929); Annot., 102 A.L.R. 852, 854 (1936); Annot., 134 A.L.R. 1064 (1941).

If, as plaintiffs contend, they were not in arrears with their payments, they were entitled to keep possession of the premises, and to refuse to move when Mr. Fletcher orderd them to vacate "tomorrow." Instead, they importuned Mrs. Fletcher "to give them until Saturday to move." Having surrendered possession, they were still entitled — even if they were in arrears — to tender to defendants the unpaid balance of the purchase price within a reasonable time and to have specific performance of their contract to convey. In the absence of special circumstances or a stipulation to the contrary, time is not of the essence in a contract of sale and purchase of land. *Douglass v. Brooks*, 242 N.C. 178, 87 S.E. 2d 258. But until a vendee "has made full payment he is not in condition to demand a conveyance of the land." *Jones v. Boyd, supra* at 261.

Upon the breach of a contract of purchase and sale, several courses are open to the injured party. Upon a breach by the vendor, the vendee, *inter alia*, may (1) stand upon the contract and sue at law for damages for its breach, or he may go into equity seeking its specific performance; or (2), treating the vendor's breach as an abandonment, may himself abandon the contract — thereby rescinding it — and recover what he has paid. Other available remedies are enumerated in 92 C.J.S., Vendor & Purchaser § 543 (1955). Upon a breach by the vendee, the vendor also has a choice of remedies. (In North Carolina, of course, the vendor has no lien absent a mortgage or deed of trust.)

> "(He) may bring an action for damages for the breach, or may sue in equity for specific performance, or bring an action for the purchase price remaining unpaid, or proceed to enforce his vendor's lien for unpaid purchase money, or, if he has parted with possession of the land, he may sue to recover its possession, or retake possession if the premises are vacant; he may retake possession and recover damages for the breach, or he may bring a suit for foreclosure of the vendee's interest or to quiet title, or he may rescind the contract *in toto* with the usual rights and duties attendant on such action, or he may accept the noncompliance as a forfeiture of the contract, or he may bring an action to rescind the contract or declare it at an end. Further, he may remain inactive and retain for his own use the moneys paid by

the purchaser, and he may retain or recover a deposit made by the purchaser on the purchase price." 92 C.J.S., Vendor & Purchaser § 375 (1955).

See *Credle v. Ayers,* 126 N.C. 11, 35 S.E. 128; *Allen v. Taylor, supra; Mitchell v. Wood, supra.* For an interesting discussion of the remedies available to both vendee and vendor see *Glock v. Howard & Wilson Colony Co.,* 123 Cal. 1, 69 Am. St. Rep. 17, 43 L.R.A. 199, wherein it is said: "If his generosity prompts him so to do, he (vendor) may agree with the vendee for a mutual abandonment and rescission, in which last case, and in which last case alone, the vendee in default would be entitled to a repayment of his money." *Id.* at 25.

If the purchaser makes default in the stipulated payments, the vendor may refuse to perform further on his part, or he may take proceedings to foreclose the vendee's rights under the contract, "without incurring liability at law to refund to the purchaser any part of the purchase money theretofore paid *where the vendor does no act indicating rescission of the contract.*" (Italics ours.) 55 Am. Jur., Vendor and Purchaser §§ 535, 536 (1946). The mere fact that the vendor resumes possession of the property does not entitle the purchaser to recover payments made on the contract where it is not rescinded. 92 C.J.S., Vendor & Purchaser § 554 (1965).

> "Rescission is something more than a mere declaration of forfeiture by which a seller seeks to eliminate the rights of a delinquent purchaser and retain advance payments. . . . (A) rescission implies the entire abrogation of the contract and a restoration of the benefits from the other party." *Pedley v. Freeman,* 132 Iowa 356, 109 N.W. 890, 119 Am. St. Rep. 557. *Accord,* Annot., 94 A.L.R. 1239, 1240 (1935).

The distinction between rescission, forfeiture, and the termination of a vendee's contractual rights because of his failing to perform his obligations is an important one. Annot., L.R.A. 1918B, 547-549; Annot., 59 A.L.R. 189, 215 (1929); see 31 A.L.R. 2d 10; 8A Thompson, Real Property §§ 4465, 4466 (1963 repl.). It depends ordinarily not only upon the acts of the parties but *the intent* with which they are done.

> "Rescission is not merely a termination of contractual obligations. It is abrogation or undoing of it from the beginning. It seeks to create a situation the same as if no contract ever had existed. It differs from a breach of contract by abandonment or repudiation by one party, so recognized by the other. *For rescission there must be mutuality, express or implied.* The mutuality essential to rescission may be found to exist if, after breach of contract or abandonment by one party, the other by

word or act declares the contract rescinded." (Italics ours.) *Dooley v. Stillson,* 46 R.I. 332, 335, 128 Atl. 217, 218, 52 A.L.R. 1505, 1507 (1928).

Rescission may be by mutual agreement or one party may rescind because of a substantial breach by the other. 69 Am. St. Rep. 31 (1899); Annot., L.R.A. 1918B, 540, 541; Annot., 59 A.L.R. 189, 190, 215-220 (1929); Annot., 102 A.L.R. 852, 861-863 (1936); Annot., 134 A.L.R. 1064, 1075-1077 (1941); 55 Am. Jur., Vendor & Purchaser §§ 579, 581 (1946). In either case, a rescission of the contract entitles each party to be placed *in statu quo ante fuit.* A vendee in default is entitled to recover payments made even though the contract provided that on default in a payment he should forfeit them. At the same time, however, the vendor is entitled to recoup for any damages of omission or commission arising from vendee's use and occupation of the real estate. These would include, *inter alia,* a reasonable rent for the property and compensation for any destruction or depreciation which vendee caused. *Glock v. Howard & Wilson Colony Co., supra; Hurley v. Anicker,* 51 Okla. 97, 151 Pac. 593, L.R.A. 1918 B, 538; *Dooley v. Stillson, supra;* 55 Am. Jur., Vendor & Purchaser §§ 538, 542, 611, 636 (1946).

The theory of plaintiffs' case appears to be this: Defendants' wrongful demand that plaintiffs surrender possession of the property at a time when they were not in default was conduct clearly inconsistent with the contract and evinced their purpose to rescind it; plaintiffs, who were not in default, acquiesced in defendants' purpose by voluntarily surrendering possession, thereby rescinding the contract.

> "(An) implied agreement to rescind may consist in an abandonment or repudiation of the contract by one of the parties assented to or acquiesced in by the other; but to constitute rescission by mutual consent, both of these elements must be present. Conduct on the part of both the vendor and the purchaser which is inconsistent with the continuance of the contract of sale constitutes rescission by abandonment." 91 C.J.S., Vendor & Purchaser § 124 (1955).

Abandonment, however, is to be inferred only from acts and conduct which are clearly inconsistent with the contract. *Bell v. Brown,* 227 N.C. 319, 42 S.E. 2d 92.

Taking the evidence most favorable to plaintiffs as true, considering it in the light most favorable to plaintiffs, and giving them the benefit of every inference which may reasonably be deduced from it — as we are required to do, *Edwards v. Johnson,* 269 N.C. 30, 152

S.E. 2d 122 — , the jury could find the facts to be in accordance with this hypothesis. If they did so find, it would follow as a matter of law that a rescission had occurred. The court erred, therefore, in withdrawing the case from the jury and dismissing it as of nonsuit.

Reversed.