BROCKMANN INDUSTRIES, INC. and
Karin T. Brockmann,
Plaintiffs–Appellants,

v.

CAROLINA SECURITIES CORP. and
Mark A. Kronenfeld,
Defendants–Appellees.

No. 88–2003.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 5, 1988.

Decided Nov. 21, 1988.

William W. Nickerson, Robert L. Muse (Robert E. Freer, Barnett & Alagia, Washington, D.C., on brief), for plaintiffs-appellants.

William C. Cleveland (Theodore B. Guerard, Columbia, S.C., Van D. Hipp, Jr., Spartanburg, S.C., Haynsworth, Marion, McKay & Guerard, Columbia, S.C., on brief), for defendants-appellees.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation; WIDENER and HALL, Circuit Judges.

POWELL, Associate Justice:

This diversity case arises under the South Carolina Uniform Securities Act, S.C. Code Ann. §§ 35–1–10 to 35–1–1590 (Law Co-op. 1987). The question presented is whether a dissatisfied buyer of securities who accepts a statutory offer of rescission may subsequently bring suit for attorneys' fees incurred in seeking the rescission. Because we find no authority for such a suit under the Act, we affirm the district court's dismissal of the buyer's complaint.

I.

The facts are not disputed. In August 1986, appellee Carolina Securities, Inc., through its agent appellee Mark Kronenfeld, sold 5,000 shares of Westerbeke Corporation stock to appellant Brockmann Industries, Inc. and 2,000 shares of the same

to appellant Karin Brockmann. Appellants paid $45,000 and $18,000 respectively for the shares. The decision to purchase the shares was made by Juergen Brockmann, president of Brockmann Industries and husband of Karin Brockmann. Kronenfeld told Brockmann that Westerbeke was a "hot new issue," and advised purchasing the shares and then selling them in a few days after the price rose.

Brockmann received a confirmation of the purchase marked "subt. to prospectus." The prospectus did not accompany the confirmation, and the record indicates that Brockmann did not receive a prospectus until five months later. Following the sale, the price of the Westerbeke shares declined. Brockmann told Kronenfeld that he was unhappy with the stock's performance, but Kronenfeld advised Brockmann to hold the stock. Despite Kronenfeld's assurances, the price of the shares continued to fall.

Brockmann requested that Carolina Securities rescind the transaction, and had a number of discussions with officers of the company. Brockmann claimed that Kronenfeld made misrepresentations and that he failed to provide a prospectus until February 1987. Carolina Securities stated that they were conducting an "internal investigation" of the sale, but eventually declined to rescind the transaction. Appellants then retained the law firm of Barnett and Alagia. The firm wrote Carolina Securities on March 3, 1987 demanding rescission. Carolina Securities refused by letter of April 8, stating that an internal investigation revealed no grounds for rescission. Appellants then sent Carolina Securities a copy of a draft complaint alleging violations of the South Carolina Uniform Securities Act.

Appellants' attorneys subsequently discovered that Kronenfeld had not been licensed to sell securities in South Carolina at the time of the sale as required by S.C. Code § 35-1-410. They informed Carolina Securities of this fact on June 10, and five days later sent an amended draft complaint that included a cause of action for sale of securities by an unregistered dealer. On June 16, Carolina Securities by letter offered to refund the consideration paid with six percent interest from the date of the sale. The offer to rescind tracked S.C. Code § 35-1-1530 (hereinafter § 1530), which provides:

**§ 35-1-1530. Limitation of actions; effect of offer to refund consideration with interest.** No person may sue under §§ 35-1-1490 and 35-1-1500 more than three years after the contract of sale. No person may sue under either section (a) if the buyer received a written offer, before suit and at a time when he owned the security, to refund the consideration paid together with interest at six percent per year from the date of payment, less the amount of any income received on the security, and he failed to accept the offer within thirty days of its receipt or (b) if the buyer received such an offer before suit and at a time when he did not own the security, unless he rejected the offer in writing within thirty days of its receipt.

S.C. Code Ann. § 35-1-1530 (Law. Co-op. 1987). The letter clearly stated that the offer to rescind was based on the fact that Kronenfeld was not registered in South Carolina at the time of the sale, and that appellants had a right to recover under S.C. Code § 35-1-1490 (hereinafter § 1490). Section 1490 provides:

**§ 35-1-1490. Liability to buyers for illegal or fraudulent sales or offers.** Any person who: (1) Offers or sells a security in violation of [certain provisions of the Act, including those requiring registration of dealers and delivery of a prospectus]; or (2) Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact....; Is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at six per cent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if

he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at six percent per year from the date of disposition.

S.C. Code Ann. § 35–1–1490 (Law. Co-op. 1987).

Appellants replied to the offer in a June 26 letter, stating that they accepted the offer of rescission in principle, but that appellees must also pay the attorneys' fees incurred by appellants during the dispute. Appellee promptly replied on July 1, putting appellants on notice that fees were not included in the offer.[1] On July 15, appellants nevertheless unconditionally accepted the offer to rescind the sale and shortly thereafter cashed the refund checks. Carolina Securities' July 20 letter transmitting the checks stated that "the above [payments] should settle any and all controversy in the matter of your purchase of Westerbeke Corporation common stock through Carolina Securities Corporation." On July 30, appellants again demanded payment of their attorneys' fees, contending that they were entitled to sue under § 1490 for the attorneys' fees alone.

When Carolina Securities again refused, appellants filed this suit in the District of South Carolina. The complaint alleged violations of the Uniform Securities Act, including fraudulent practices, sale of securities by an unregistered dealer, and failure to provide a prospectus. The complaint also alleged common law negligent misrepresentation and negligence. Appellants demanded $16,648 for fees incurred in obtaining the offer to rescind, and attorneys' fees and costs in the suit. Carolina Securities

filed a motion to dismiss under Fed.R.Civ. P. 12(b)(6). The district court granted the motion, rejecting appellants' claim under § 1490, as well as claims for the fees under theories of equitable rescission and mitigation of damages. *Brockmann Industries v. Carolina Securities Corp.*, 677 F.Supp. 430 (D.S.C.1987).

## II.

■ Appellants' claim for attorneys' fees is governed by South Carolina law. South Carolina adheres strictly to the rule that a party must pay his own attorneys' fees absent a statutory or contractual provision to the contrary. See, e.g., *Duke Power Co. v. South Carolina Public Service Commission*, 284 S.C. 81, 326 S.E.2d 395 (S.C. 1985). The South Carolina Court of Appeals has even refused to adopt a bad faith exception to the "American Rule." *Weeks v. McMillan*, 291 S.C. 287, 353 S.E.2d 289 (S.C.App.1987). Had appellants prevailed in a suit for rescission under § 1490 of the Uniform Securities Act, that section would have provided for an award of fees. This case, however, presents a bare claim for fees under § 1490 where appellants had already received and accepted an offer of rescission under § 1530. We have found no case addressing such a claim from South Carolina[2] or the other states that have adopted the Uniform Securities Act.[3]

We note at the outset that § 1490 does not explicitly endorse a suit such as this one. On the contrary, § 1490 appears to apply only where a plaintiff establishes a violation of the securities laws through litigation. The section states that an aggrieved buyer may "sue either at law or in

---

**1.** Carolina Securities' letter stated: "You condition final acceptance of Carolina Securities' Offer upon the payment of over $16,000 in attorney's fees which you contend are due you by statute and upon which Carolina Securities' offer to rescind was silent.... Our South Carolina counsel advise us that while it is true § 35–1–1490 allows a successful *litigant* to recover reasonable attorney's fees, § 35–1–1530 is the section which controls the issue here."

**2.** We recognize that the South Carolina Supreme Court has adopted a rule providing for certification of questions of South Carolina law

to the Court from other federal and state courts. S.C.Sup.Ct.R. 46. We think the proper construction of the statute in issue here is sufficiently clear that this case would not be an appropriate one for certification.

**3.** The Uniform Securities Act (1956), with various modifications, has been adopted by 33 states, the District of Columbia, and Puerto Rico. Each of the states in this circuit has adopted the Act. Three states have adopted the Revised Uniform Securities Act (1985). See 7B *Uniform Laws Annotated* 33, 123 (West Supp. 1988).

equity" to recover the consideration paid for the security. Where a plaintiff prevails, he may recover the consideration *"together with"* interest, costs, and fees. The term "together with" indicates that the statute provides attorneys' fees as an ancillary remedy where a plaintiff obtains rescission through litigation. It does not suggest a cause of action for recovery of fees alone. Similarly, the term "costs" has meaning only in the context of litigation. Appellants obtained the remedy of rescission not through litigation, but through an offer pursuant to § 1530.

Examination of § 1530 further demonstrates that appellants may not bring suit on these facts. Section 1530 provides that "no person may sue under [§ 1490]" where the buyer received a written offer before suit "to refund the consideration paid together with interest at six percent per year from the time of the payment." The section does not mention attorneys' fees or costs. Carolina Securities made a written offer that expressly met the terms of § 1530, and appellants accepted it. We think that completion of a valid offer, either by acceptance or by failure to accept within the 30-day period required by the section, brings the dispute to a close. See Rowe, *Rescission Offers Under Federal and State Securities Law*, 12 J. Corp. L. 383, 424 (1987) (completion of a valid offer "eradicates civil liability").

■ Of course, in order to foreclose future litigation an offer of rescission must comply with statutory requirements. Where a plaintiff has received an inadequate offer and is "forced to file suit to obtain the remedy provided by the statute," an award of attorneys' fees following the litigation would be proper. See *Dixon v. Oppenheimer & Co., Inc.*, 739 F.2d 165, 168 (4th Cir.1984) (construing Virginia Uni-

form Securities Act).[4] But where, as here, the offer complies with the terms of § 1530, the procedures established by that section "obviate the need for suit." *Id.*

Appellants argue that § 1530 is inapplicable here, pointing to the statutory language precluding suit where a buyer of securities "failed to accept an offer within thirty days of its receipt." Appellants contend that because they *accepted* the offer of rescission within thirty days, they preserved the right to sue for fees under § 1490. Appellants are correct in stating that the literal language of § 1530 does not address specifically the situation where a buyer accepts an offer of rescission. Even assuming § 1490 would support an action for fees alone, we must reject appellants' interpretation of § 1530. We believe appellants' view of § 1530 is inconsistent both with a sensible understanding of the statute's operation and with the section's evident purpose.

The purpose of § 1530 is to "allow parties to avoid litigation and quickly settle their differences." *Merchant v. Oppenheimer & Co. Inc.*, 568 F.Supp. 639, 642 (E.D.Va.1983) (construing equivalent provision of the Virginia Uniform Securities Act), *rev'd in part on other grounds*, 739 F.2d 165 (4th Cir.1984). This purpose would be largely undercut by appellants' interpretation. Liability for fees under § 1490 is predicated on establishing by litigation a violation of the Act. Appellants' reading of the statute thus contemplates settlement of the core of the dispute—the consideration paid for the security—but would allow subsequent litigation for the sake of fees alone. This prospect of post-rescission litigation, necessarily including the merits of a plaintiff's claim for liability, would severely diminish defendants' incentives to offer rescission.[5]

**4.** We cannot accept appellants' contention that fees should be allowed here because appellees were recalcitrant in the face of Brockmann's demands. The Act does not impose any requirement that a seller offer rescission within a specified time. We decline to adopt an exception allowing for fees on the basis of the seller's behavior. Such an exception would be difficult to administer, and would result in uncertainty for sellers and buyers alike. So long as an offer

of rescission meets the terms of § 1530, the section will operate to preclude litigation. A buyer frustrated by a seller's delay in offering rescission always retains the option of filing suit under § 1490 prior to an offer.

**5.** Appellants emphasize that establishment of liability in this case would be simple due to Kronenfeld's admitted failure to register. This fact, however, does not support the general rule

Appellants' view of the statute would essentially require a seller to offer reimbursement for attorneys' fees as part of any § 1530 offer in order to be certain that a dispute is finally resolved. Had the drafters of § 1530 intended such a result, the section would have required inclusion of fees in the rescission offer just as attorneys' fees are included in § 1490. The Act cannot rationally be read on the one hand to exclude fees from § 1530, a rescission provision intended to avoid litigation, and then on the other hand to allow litigation for collection of fees under § 1490. Such an interpretation would frustrate the reasonable purpose of providing the option of rescission as an alternative to litigation.

Appellants correctly point out that securities laws must be interpreted to protect the investing public. See, e.g., *McGaha v. Mosley*, 283 S.C. 268, 322 S.E.2d 461 (S.C. App.1984). Yet we do not believe the public interest would be served by adoption of the position appellants advance. Section 1530 operates to give sellers of securities an incentive to settle disputes with buyers. In return for giving up potential defenses to suit, sellers may fix the amount of their liability with certainty and avoid the costs of litigation, including the possibility of liability for plaintiff's attorneys' fees under § 1490. See Goldwasser & Makens, *State Regulation of Capital Formation and Securities Transactions*, 451 P.L.I. Corporate Law and Practice Handbook 838 (1983). This incentive benefits buyers of securities by making it more likely that they will receive expeditiously the relief most important to them—rescission of the sale and a refund of consideration with interest. We believe the district court was correct in holding that the Uniform Securities Act provides no basis for appellants' suit.

### III.

■ In addition to their statutory argument, appellants claim attorneys' fees un-

der theories of "equitable rescission" and "mitigation of damages." We find these arguments to be without merit. Appellants point to no South Carolina case recognizing an equitable rescission exception to the rule that a party must pay his own fees. Appellants argue that § 1490 provides a *statutory* authorization for the exception. As discussed above, the statute cannot support an action for fees on these facts. With respect to mitigation of damages, there is no evidence that appellants incurred attorneys' fees in an attempt to mitigate damages. Mitigation is concerned with expenditures made to reduce the damage caused by tortious behavior. Here, fees were expended not to reduce appellants' losses but to recover them. Assuming arguendo that South Carolina might in some circumstances allow recovery of attorneys' fees as an element of mitigation, the district court correctly concluded that the fees here were not a mitigation expense.

### IV.

The judgment of the district court dismissing appellants' complaint is hereby

AFFIRMED.

---

for which appellants argue. Establishment of liability in many cases would be more complex, as in a suit alleging misrepresentation or failure to disclose. We do not think the Act can rea-

sonably be interpreted as allowing potentially difficult litigation on the merits of an alleged violation where only fees remain at issue.