RUTH E. MASHBURN v. FIRST INVESTORS CORPORATION AND DORCAS ANN BROOKS

No. 9230SC641

(Filed 3 August 1993)

**Corporations § 16.1 (NCI3d) — fraud by securities broker — rescission offer by brokerage firm — claim by investor barred**

Defendant securities brokerage firm made a valid rescission offer to plaintiff investor for fraud by its broker pursuant to N.C.G.S. § 78A-56(g)(1), and plaintiff is thus precluded by

**MASHBURN v. FIRST INVESTORS CORP.**

[111 N.C. App. 398 (1993)]

her acceptance of the amount offered from maintaining an action against the brokerage firm, where the firm offered plaintiff an amount equal to the total amount invested by plaintiff less (1) systematic monthly payments made to plaintiff which were misrepresented by the broker to be interest but which were actually a return of capital, (2) payments made to plaintiff by the broker which were misrepresented as investment returns but which were from unknown and possibly illegal sources, and (3) the total amount of legitimate interest and dividends received by plaintiff, plus interest at 8%. The systematic and broker payments compensated plaintiff for her out of pocket loss and should be considered as income within the meaning of N.C.G.S. § 78A-56(g)(1), and plaintiff has received a return of her investment plus interest.

**Am Jur 2d, Corporations § 710.**

Appeal by plaintiff from judgment signed and entered 27 April 1992 by Judge Julia V. Jones in Cherokee County Superior Court. Heard in the Court of Appeals 14 May 1993.

*Zeyland G. McKinney, Jr., for plaintiff-appellant.*

*Patla, Straus, Robinson & Moore, P.A., by Harold K. Bennett, for defendant-appellee.*

LEWIS, Judge.

The issues presented by this appeal arise from the greed of Dorcas Ann Brooks ("Brooks") and her plans for ill-gotten gain at the expense of her unknowing victim, Ruth E. Mashburn ("Mashburn"). Between 1985 and 1987, Brooks operated an unregistered office for the sale of securities in Andrews, North Carolina on behalf of First Investors Corporation ("First Investors"). During the relevant time period one of Brooks' customers was Mashburn, the plaintiff in this action. Upon seeing an ad for the sale of securities in a local newspaper, Mashburn contacted Brooks and was persuaded to invest in various securities through First Investors. It is uncontroverted that Brooks made several fraudulent and material misrepresentations to Mashburn in persuading her to invest. Included were misrepresentations that Mashburn's principal investment would remain the same, that the securities in which she was investing were backed by and insured by the United States Government and that the annual yield would be 14.42%.

On 25 October 1985, relying on Brooks' representations, Mashburn gave Brooks a check in the amount of $38,000 to be invested with First Investors in its Government Fund. At the time Mashburn made her initial investment she also signed an account authorization form. Unbeknownst to Mashburn, the effect of the account authorization form returned $470 a month to her of her initial capital investment. Brooks misrepresented these monthly payments to Mashburn as interest payments instead of return of capital. After her initial investment Mashburn purchased additional securities from Brooks bringing her total investment with First Investors to $67,000. All of this money was received and recorded on the books of First Investors.

In May of 1987, Mashburn became concerned when the checks she was receiving were being drawn on different banks and had different account numbers. Brooks then suggested that Mashburn liquidate her previous investments and combine all of her investments into one account. Thereafter, under the pretext of liquidating Mashburn's accounts, Brooks gave Mashburn a check in the amount of $70,000. Of the $70,000, Mashburn kept $1,000 and then reinvested the remaining $69,000 with Brooks. In fact, however, Mashburn's reinvestment of $69,000 was never received by First Investors. As it turned out, most of the monthly payments which Mashburn had been receiving from the various banks had been from Brooks herself and were from unknown sources. (These payments will be referred to hereafter as "the Brooks payments.")

It was not until July of 1987 when Brooks was investigated for securities fraud that Mashburn became aware of the misrepresentations. Upon learning of Brooks' fraudulent activities First Investors made a rescission offer on 20 January 1988 to Mashburn pursuant to N.C.G.S. § 78A-56 in the amount of $26,737.77. Mashburn, in a letter to First Investors dated 6 March 1988, conditionally accepted First Investors' rescission offer, but reserved her right to sue First Investors for breach of contract, fraud and punitive damages. Thereafter, First Investors mailed a cashier's check to Mashburn in the amount of $26,560.12, which Mashburn accepted and cashed. First Investors arrived at the amount of the rescission offer by taking the total amount invested by Mashburn ($136,000), and deducting the amount of the Brooks payments ($92,072), the amount of the systematic withdrawals ($13,160), and the total amount of legitimate interest and dividends received by Mashburn ($12,047.56). On this amount, First Investors calculated 8% interest

MASHBURN v. FIRST INVESTORS CORP.

[111 N.C. App. 398 (1993)]

and arrived at the rescission offer amount of $26,560.12. The difference between the original rescission offer and the amount of the rescission check was explained by First Investors as a failure to credit itself with one of the Brooks payments.

This matter seemed concluded until 1 July 1988, when Mashburn filed an action against First Investors seeking damages for breach of contract, fraud and negligence. First Investors filed its answer on 19 September 1988 asserting its rescission offer as a bar to Mashburn's claims. After having journeyed through this Court once before, this matter was remanded for a new trial. On remand First Investors made a Motion to Dismiss pursuant to Rule 41(b). Judge Jones granted First Investors' motion and held that Mashburn was barred from pursuing any further claims against First Investors due to its rescission offer. Mashburn appealed.

The essence of Mashburn's appeal is that First Investors has failed to make a valid rescission offer under the terms of N.C.G.S. § 78A-56(g)(1) and that she is therefore not precluded from maintaining her present action. In particular Mashburn claims that First Investors' rescission offer is invalid due to the fact that First Investors included both the systematic payments as well as the Brooks payments in calculating the rescission offer. N.C.G.S. § 78A-56(g)(1) (Cum. Supp. 1992) provides in pertinent part:

> No purchaser may sue under this section if, before suit is commenced, the purchaser has received a written offer stating the respect in which liability under this section may have arisen and fairly advising the purchaser of his rights; offering to repurchase the security for cash payable on delivery of the security equal to the consideration paid, together with interest at the legal rate as provided by G.S. 24-1 from the date of payment, *less the amount of any income received on the security* or, if the purchaser no longer owns the security, offering to pay the purchaser upon acceptance of the offer an amount in cash equal to the damages computed in accordance with subsection (a); and stating that the offer may be accepted by the purchaser at any time within 30 days of its receipt; and the purchaser has failed to accept such offer in writing within the specified period.

(Emphasis added). The crux of the parties' dispute centers on the language "less the amount of any income received on the security," because nowhere in the statute is the term "income" defined. Never-

theless Mashburn contends that the systematic withdrawals and the Brooks payments are not income within the meaning of section 78A-56(g)(1). We disagree.

Though this is a case of first impression, N.C.G.S. § 78A-56(g)(1) is modeled after the Uniform National Securities Act and we have found cases in other jurisdictions which have interpreted similar statutes. One was handed down by the Fourth Circuit in *Brockman Industries, Inc. v. Carolina Securities Corp.*, 861 F.2d 798 (4th Cir. 1988), in which the court interpreted a South Carolina statute. In *Brockman*, Carolina Securities made a rescission offer to its investors on the basis that one of its agents was not registered. After conditionally accepting the rescission offer, Brockman Industries instituted a separate action for the recovery of attorneys' fees. The Fourth Circuit held that the "completion of a valid offer, either by acceptance or by failure to accept within the 30-day period . . ., brings the dispute to a close." *Id.* at 801. Given that the South Carolina statute concerning rescission offers is virtually identical to N.C.G.S. § 78A-56(g)(1) and since all of the states in the Fourth Circuit have adopted the Uniform National Securities Act, we find the *Brockman* opinion persuasive. If First Investors has made a valid rescission offer, Mashburn's subsequent suit will be barred.

In determining whether First Investors has made a valid rescission offer we must consider not only the language of N.C.G.S. § 78A-56(g)(1), but also its purposes. At oral argument, the parties seemed to agree that one purpose of section 78A-56(g)(1) is to restore the status quo. We agree. In *Brannock v. Fletcher*, 271 N.C. 65, 74, 155 S.E.2d 532, 542 (1967), our Supreme Court stated "[r]escission is not merely a termination of contractual obligations. It is abrogation or undoing of it from the beginning." (Citation omitted). "[A] rescission of the contract entitles each party to be placed *in statu quo ante fuit.*" *Id.* at 75, 155 S.E.2d at 542 (emphasis in original). It has also been said that a rescission offer allows the parties to avoid litigation and quickly settle their differences. *See Brockman*, 861 F.2d at 801. We believe that by allowing Mashburn to continue her suit against First Investors both of these purposes would be frustrated.

Though the parties have agreed that one of the purposes of a valid rescission offer is to restore the status quo, they disagree as to what it will take to achieve that goal. Mashburn contends

that it was her expectation that she would have a principal investment of $69,000 at all times and that the systematic payments should not be considered in restoring her to the status quo. Essentially Mashburn makes a "benefit of the bargain" argument and seeks to be placed in the same position she would have been if her investments had gone as planned. This does not restore the status quo. In fact, this approach would allow for a windfall in favor of Mashburn, in that she would be able to retain the systematic withdrawals with no offset and she would still get her entire $69,000 investment back.

It is undeniable that Mashburn is not in the financial position in which she had hoped to be. Instead, the $69,000 investment has decreased by the amount of the monthly withdrawals. Since these withdrawals were actually authorized by Mashburn and were in fact a return of her capital, we cannot allow Mashburn to recover twice. As one court stated, statutes such as N.C.G.S. § 78A-56(g)(1) seek to reimburse the purchaser for his actual out-of-pocket loss and not for the "benefit of the bargain." *Garretson v. Red-Co, Inc.*, 516 P.2d 1039, 1042 (Wash. App. 1973). We hold that First Investors' rescission offer has in fact reimbursed Mashburn for her out of pocket loss at least in respect to the systematic withdrawals and that the systematic payments were properly characterized as income.

Since the rescission offer specifically informed Mashburn that she would be barred from bringing further claims for liability with the possible exception of the Brooks payments, we will consider how the Brooks payments should be characterized. Similar to the systematic payments, we find that the Brooks payments compensated Mashburn for her out of pocket loss and should be considered as income. Even though these payments were from unknown and possibly illegal sources, the Brooks payments represented money which Mashburn had the use of for close to two years. To exclude these payments as income in figuring the rescission offer would have also amounted to a windfall in favor of Mashburn. We therefore hold that First Investors made a valid rescission offer to Mashburn and that interest was properly calculated on the offer.

The last question we must address is whether or not Mashburn's suit is barred by the rescission offer. As stated in a recent law review article, "the primary effect of the [rescission] offer will be to eradicate civil liability, at least with respect to certain state

MASHBURN v. FIRST INVESTORS CORP.

[111 N.C. App. 398 (1993)]

securities law violations which, if sued upon, would have resulted in a judgment equal to the amount received by the offeree." Michele Rowe, *Rescission Offers Under Federal and State Securities Law*, 12 J. Corp. L. 383, 424 (1987). After reviewing Mashburn's complaint we find that the remedies she seeks are nothing more than a return of her investment plus interest. This is exactly what the rescission offer has already returned to her. As a result we find that Mashburn's action is barred by First Investors' valid rescission offer.

Mashburn has also raised as an issue the failure of the trial court to find facts specially as required by Rule 52 of the North Carolina Rules of Civil Procedure. Mashburn claims that the trial court did not make any findings as to why the Brooks payments and the systematic payments constituted income. The requirement that facts be specially found is merely to provide a basis for appellate review. *In re Jones*, 62 N.C. App. 103, 302 S.E.2d 259 (1983). As was the case in this matter, it is possible for findings of fact to be established by stipulation. See *Hollerbach v. Hollerbach*, 90 N.C. App. 384, 368 S.E.2d 413 (1988). We have reviewed the trial court's findings of fact, which were adopted from the parties' stipulations, and conclude that they support the trial court's conclusions of law. As a result Mashburn's assignment of error is overruled and the judgment of the trial court is hereby,

Affirmed.

Judges EAGLES and McCRODDEN concur.